No. 97-004

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 368

303 Mont. 422

15 P. 3d 938

STATE OF MONTANA,

Plaintiff and Respondent,

v.

SHAWN RAY HIGHPINE,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General, Helena, Montana

Brant Light, Cascade County Attorney; Great Falls, Montana

Submitted on Briefs: June 8, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Shawn Ray Highpine (Highpine) appeals from the Eighth Judicial District Court's denial of his motions to dismiss on a speedy trial issue and to strike the jury panel. The State initially resisted both grounds but later filed a partial concession regarding the motion to strike the jury panel. We affirm in part and reverse in part.

¶2 Highpine raises the following issues on appeal:

¶3 1. Was Highpine denied his right to speedy trial?

¶4 2. Did the District Court err in denying Highpine's motion to strike the jury panel?

Factual and Procedural Background

¶5 The facts pertinent to this appeal are primarily procedural. Highpine was charged with aggravated kidnaping, sexual intercourse without consent, and aggravated burglary on March 28, 1995 and arraigned within three weeks. The court set the omnibus hearing for September 20, 1995. At the hearing, the trial was set for February 19, 1996, but was subsequently changed three times. On May 20, 1996, eight days before the trial, Highpine moved the court to dismiss for violation of his right to a speedy trial. After hearing argument three days later, the court denied the motion. Although some dispute exists as to precisely how many of the 428 days of delay should be attributed to whom, the State concedes that 350 days of the delay should be attributed to the State.

¶6 Highpine also filed a pre-trial motion to strike the jury panel for violations of the statutory procedure for drawing and notifying the jurors. Highpine objected to the fact that the clerk of court mailed questionnaires and notices to jurors, but included in the final list

of jurors only those people who included their telephone numbers on the returned questionnaires. People who returned the questionnaires with no phone numbers, who did not respond to the notice, or did not return the clerk's phone calls were not included in the final list of jurors.

¶7 The statute requires that when "a person fails to respond to the notice, the clerk shall certify the failure to the sheriff, who shall then serve notice personally on such person and require a response to the notice." Section 3-15-505, MCA (1995). Because the clerk did not so certify, the Sheriff did not personally serve notice on any of the potential jurors.

¶8 The court denied Highpine's motion, holding that although the clerk of court had not followed the procedures outlined in § 3-15-505, MCA, the clerk had not discriminated against any particular group and Highpine had not been deprived of an impartial jury.

¶9 Following the trial on May 28, 1996, the jury found Highpine guilty and the court sentenced him to 105 years in Montana State Prison. In August, 1998, Highpine's case was before this Court on appeal and we ordered the speedy trial issue remanded to the district court for reconsideration in light of Billings v. Bruce, 1998 MT 186, 290 Mont. 148, 965 P.2d 866.

¶10 After remand by this Court, the District Court received briefs and heard arguments for reconsideration of the speedy trial issue. The court attributed 215 days of the delay to the State and 213 days to Highpine. The court concluded that under the *Bruce* analysis, which requires attribution of 275 days of delay to the State in order to shift the burden, the State did not bear the burden of establishing a lack of prejudice resulting from the delay. The court also held that despite this conclusion, the State had established, through presentation of testimony from Lieutenant Hada and argument based on evidence in the record, that Highpine was not prejudiced, as he had suffered neither impairment of his defense nor anxiety and concern as a result of the delay. The court further concluded that Highpine did not present testimony or evidence to overcome the State's evidence establishing a lack of prejudice.

¶11 Highpine's appeal of the second denial of his motion to dismiss as well as of the earlier denial of his motion to strike the jury panel is now before this Court.

## Discussion

¶12 1. Was Highpine denied his right to speedy trial?

¶13 Highpine contends that the District Court incorrectly concluded that he was not denied a speedy trial. Whether a defendant has been denied a speedy trial is a question of constitutional law. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. State v. Ellenburg, 2000 MT 232, ¶14, ___ Mont. ___, ¶14, 8 P.3d 801, ¶ 14.

¶14 Both the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution, guarantee a criminal defendant's right to a speedy trial. *Ellenburg*, ¶ 14. We consider and balance each of four factors in our review of a claim that a defendant has been denied a speedy trial: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. Barker v. Wingo (1972), 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 118. Because no single factor is by itself decisive, "courts must still engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. We employ the balancing test enunciated in *Bruce*: the "greater the degree of fault by the State in causing the delay, the less the delay or prejudice that need be shown. Where there is no fault on the part of the State for delay, greater prejudice, and presumably greater delay, would have to be shown." *Bruce*, ¶ 53. Length of Delay

¶15 We first consider the length of delay from the time the charges were filed until Highpine's trial date. When the delay is 200 days or longer, further speedy trial analysis is necessary. *Bruce*, ¶ 55. In this case, the court found that the 428 days of delay triggered further speedy trial analysis.

Reason for Delay

¶16 We next consider the reason for the delay and attribute the delay to the parties. If the court attributes 275 days or more to the State, the burden shifts to the State to establish that the defendant has not been prejudiced by the delay. *Bruce*, ¶ 56. Because the State bears the burden to prosecute, we attribute to the State institutional delay along with delay caused directly by the State. *Ellenburg*, ¶18. However, institutional delay weighs less heavily against the State because it is not a delay the State actively pursued. State v. Atkins (1996), 277 Mont. 103, 107, 920 P.2d 481, 483.

¶17 The District Court attributed 215 days of the delay to the State, and 213 to Highpine.

The court, concluding that 271 days of the delay should be equally attributed between the parties, attributed 136 days of that delay to the State and 135 days to Highpine. The remaining days it attributed to the State, with the exception of the 78 days between the March 11 trial date and the actual trial held on May 28.

¶18 Highpine argues that the court incorrectly attributed 135 days of institutional delay to him as well as the 78 days delay resulting from his objection to a last-minute deposition. On appeal, the State admits that of the 428 days of delay, 350 days should be attributed to the State. Implicit in this admission is a concession that the District Court incorrectly attributed to Highpine 135 days of institutional delay.

¶19 We agree with Highpine and the State that the court incorrectly attributed 135 days of institutional delay to Highpine. We agree with the State that 350 days of delay should be attributed to the State.

## Assertion of Right

¶20 The third factor we consider is whether the defendant has asserted his right to a speedy trial. This factor is satisfied if the defendant invoked his speedy trial right at any time prior to trial. *Bruce*, ¶ 57. The court held, and the State has conceded that Highpine asserted his speedy trial right on May 20, eight days prior to trial.

## Prejudice

¶21 Finally, we consider whether Highpine was prejudiced by the delay. Although the District Court incorrectly concluded that Highpine bore the burden to prove prejudice, the State in fact did take on the burden of proof and presented substantial evidence that Highpine was not prejudiced by the delay. At the hearing on the motion to dismiss for lack of speedy trial, the court also encouraged Highpine to present proof to rebut the State's evidence that he was not prejudiced. After allowing both parties to present proof, the judge weighed all the evidence in making her decision that Highpine suffered no prejudice as a result of the delay. Although the District Court erred in holding that the State did not bear the burden, we conclude that this error was harmless, as the State did in fact shoulder that burden.

¶22 In *Bruce*, we explained that in establishing lack of prejudice the State "should take into consideration, but need not include, all three traditional bases for prejudice: (a)

pretrial incarceration, (b) anxiety and all of its attendant considerations, and (c) impairment of the defense." *Bruce*, ¶ 56. Shortly thereafter, we clarified the *Bruce* analysis by stating that although the State should offer proof on as many of the bases as possible, it must, at a minimum, present proof that the delay did not impair the defense. State v. Hardaway, 1998 MT 224, ¶ 22, 290 Mont. 516, ¶ 22, 966 P.2d 125, ¶ 22. We also held that if the State satisfies its burden of demonstrating that the defendant was not prejudiced by the delay, the burden then shifts to the defendant to show prejudice. *Hardaway*, ¶ 23. To determine whether the State sustained its burden of demonstrating a lack of prejudice against Highpine, we address each of the traditional bases for prejudice.

## Pretrial Incarceration

¶23 We recently noted that "a defendant's right to a speedy trial is not designed to prevent any pre-trial incarceration whatsoever. Rather, *Barker* instructs that the speedy trial right is designed only 'to prevent *oppressive* pre-trial incarceration.' Thus, as we have suggested since the *Bruce* decision, the proper inquiry is whether a defendant was '*unduly prejudiced* by pretrial incarceration.' " State v. Johnson, 2000 MT 180, ¶ 26, 300 Mont. 367, ¶ 26, 4 P.3d 654, ¶ 26 (citations omitted).

¶24 The court considered the nature of the crimes charged and Highpine's prior criminal history in determining that bail would be set at $250,000. Highpine was unable to post bail and remained incarcerated until trial.

¶25 Highpine contends that the fact of his incarceration satisfies this element. The State responds that the purpose of Highpine's incarceration was not to oppress, but rather to protect society. Further, the State claims that because Highpine was subsequently charged with robbery while already jailed on the charge presently at issue, any prejudice resulting from pretrial incarceration for this case is negated.

¶26 Our prior opinions have not concluded that a defendant who is incarcerated on one charge and is later charged with a second offense, cannot be prejudiced by oppressive pretrial incarceration for the first charge. Rather, we have held the reverse: that the second charge is generally not susceptible to claims of prejudice due to pretrial incarceration, as the defendant would have been incarcerated as a result of the first charge regardless of the second charge. *See* State v. Keating (1997), 285 Mont. 463, 474, 949 P.2d 251, 258; State v. Lane (1996), 279 Mont. 128, 133-34, 927 P.2d 989, 992; State v. Atkins (1996), 277 Mont. 103, 108, 920 P.2d 481, 484; State v. Gould (1995), 273 Mont. 207, 217, 902 P.2d

532, 539. ¶27 Highpine was incarcerated for over one year prior to trial and although nothing indicates that the incarceration was intended to oppress, the fact of 428 days of pretrial incarceration suffices to establish this element in this case.

## Anxiety and Concern

¶28 We recognize that a certain amount of anxiety and concern is inherent in being charged with an offense, and therefore focus on that which is aggravated as a result of the delay. State v. Williams-Rusch (1996), 279 Mont. 437, 452, 928 P.2d 169, 178.

¶29 Highpine asserts that during his incarceration before trial, inmates were antagonistic towards him. He also claims that the facility was substandard and that he had to seek medical treatment several times because he was beaten up "50 or more" times. The State responds that none of these problems was caused by the delay, but resulted rather from the fact of being charged, from the type of charges against him and from his own aggressive behavior in jail. The State supports its argument by pointing to Highpine's own testimony that his problems in jail were entirely attributable to the nature of the crimes with which he was charged.

¶30 Highpine testified that he had experienced difficulties when he was first incarcerated, but had since adapted to the conditions at the jail. The District Court concluded that this testimony suggested that Highpine was not prejudiced by anxiety and concern caused by delay. We affirm the District Court's holding that Highpine was not prejudiced by anxiety and concern resulting from the delay, but rather the anxiety and concern he felt was caused by the other inmates' reactions to the type of crimes with which he was charged and by his own obstreperous behavior in jail.

## Impairment of Defense

¶31 The United States Supreme Court warned that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' " Doggett v. United States (1992), 505 U.S. 647, 655, 112 S.Ct. 2686, 2692-93, 120 L.Ed.2d 520, 530.

¶32 Highpine argues simply that the length of the delay impaired his defense. Relying on the holdings in *Kipp* and *Bruce,* the State contends that Highpine's defense was in no manner impaired as nothing in the record reveals that Highpine lost any witnesses, or

suffered any memory loss. The State points out that Highpine had no trouble locating his witnesses for trial, and that as they were not eyewitnesses to the crimes charged and had no personal knowledge of the facts surrounding the events, they were in no danger of suffering any memory loss.

¶33 In *Kipp* and *Bruce*, we held that when evidence was presented that the defense lost witnesses and the defendant forgot some of the events surrounding the charges, the defense had been impaired by the delay. State v. Kipp, 1999 MT 197, ¶¶ 22-23, 295 Mont. 399, ¶¶ 22-23, 984 P.2d 733, ¶¶ 22-23; *Bruce*, ¶¶ 71-73. Here, in contrast to *Kipp* and *Bruce*, the State presented evidence that Highpine did not lose witnesses and did not suffer memory loss. When Highpine did not claim or present evidence of any impairment, the District Court correctly concluded that the delay did not cause Highpine any impairment of defense.

¶34 Although Highpine satisfied the first element, pretrial incarceration, he failed to rebut the State's proof of the remaining two elements: that he suffered no anxiety and concern and that his defense was not impaired as a result of the delay. After considering and balancing the three prejudice elements, we conclude that the District Court did not err when it held that the State proved Highpine was not prejudiced by the delay.

## Conclusion of Speedy Trial Issue

¶35 As discussed above, the *Barker* test requires that we balance all four factors in our analysis of speedy trial issues. In this case, although 350 days of delay has been attributed to the State, it is primarily institutional and therefore will not weigh heavily against the State. When there is less fault on the part of the State, greater prejudice need be shown. *Bruce*, ¶ 53.

¶36 We conclude that: 1) the length of delay was sufficient to raise the issue; 2) Highpine asserted his right to a speedy trial; 3) the State bore the burden of proving no prejudice; 4) the delay does not weigh heavily against the State; and 5) the State proved a lack of prejudice. After balancing all four factors, we conclude that the District Court did not err in holding that Highpine was not denied a speedy trial and we accordingly affirm the District Court order denying Highpine's motion to dismiss for violation of his right to a speedy trial. ¶37 2. Did the District Court err in denying Highpine's motion to strike the jury panel?

¶38 The court held that although the clerk had not complied with the procedure for drawing a jury, Highpine was nevertheless not prejudiced by the statutory violations. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *Ellenburg*, ¶14. As we recently and very thoroughly explained in *LaMere*, the statutorily defined procedures are intended to provide for random selection of jurors from a representative cross-section of the community. State v. LaMere, 2000 MT 45, ¶ 34, 298 Mont. 358, ¶ 34, 2 P.3d 204, ¶ 34. The procedures for such selection are intended to protect a defendant's constitutional right to a trial by an impartial jury. *LaMere*, ¶ 32. Substantial compliance with these procedures is required "to eliminate as far as possible the vagaries of human subjectivity and arbitrariness." *LaMere*, ¶ 38. A defendant's right to challenge a jury panel for substantial non-compliance with the statutory procedures is directly connected to his right to a speedy and public trial by an impartial jury. *LaMere*, ¶ 32.

¶39 In this case, the clerk of court sent out questionnaires and summonses to potential jurors and drew 200 names from the pool of those who returned the questionnaires. The clerk then served notice to the jurors by telephone. Those jurors who either failed to return questionnaires or did so without including phone numbers were not contacted at all. Those who did not respond to a phone call were not contacted again once the requisite number of jurors had been contacted. This practice did not comply with the statute which requires that when "a person fails to respond to the notice, the clerk shall certify the failure to the sheriff, who shall then serve notice personally on such person and require a response to the notice." Section 3-15-505, MCA (1995).

¶40 Highpine contends that the court erred in denying his motion to strike the jury panel for violations of the statutes governing drawing, selecting, and notifying jurors. He presented statistical evidence that the clerk's method resulted in the exclusion from the jury of economically disadvantaged people. Highpine also submitted evidence that nearly thirty percent of all Native American households have no telephone, and were therefore disproportionately excluded by the telephone notification of jurors for Highpine's trial. The State has withdrawn its entire argument regarding this issue.

¶41 When a statutory violation directly or materially affects the random nature or objectivity of the jury selection process, it is substantial or material and cannot be considered non-prejudicial to the defendant. *LaMere*, ¶ 60. The District Court's ruling that Highpine was not prejudiced by the clerk's failure to comply with the statutory procedure is therefore in error. We remand for a new trial with an impartial jury drawn and

summoned in a manner substantially in compliance with the law.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER