No. 04-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 356

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

MICHAEL BLAIR,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 02-0690,
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Melissa Edwards, Attorney at Law, Billings, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Robert Stutz,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: July 7, 2004

Decided:  December 16, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Michael Blair (Blair) was convicted of Criminal Mischief, a felony, in violation of § 45-6-101, MCA. He appeals his conviction. We affirm the District Court.

¶2 The one issue on appeal is whether the District Court erred when it denied Blair's motion to dismiss the charges against him for lack of a speedy trial.

## BACKGROUND

¶3 Blair was arrested on September 10, 2002, in connection with intentionally ramming his estranged wife's car with his pickup seven days earlier. On September 13, 2002, the State filed an Information charging Blair with Intimidation pursuant to § 45-5-203(1)(a), and Criminal Mischief, pursuant to § 45-6-101(1)(a). The same day, Blair was arraigned in the Montana Thirteenth Judicial District Court, Yellowstone County, was appointed a public defender and pled not guilty.

¶4 On September 19, 2002, the District Court set the trial for January 6, 2003. No trial was held on that date although all witnesses had been subpoenaed. On February 7, 2003, the District Court issued an order stating the trial date had passed with no resolution and trial was reset for June 9, 2003.

¶5 On February 28, 2003, Blair moved for Leave to File Motion Challenging Sufficiency of Information Charging Intimidation, which was granted. On March 12, 2003, the State filed an Amended Information and Affidavit, charging Blair with Intimidation, pursuant to § 45-5-203(2), as opposed to subpart (1), and two counts of Criminal Mischief, pursuant to § 45-6-101(1)(a), as opposed to one count, to which Blair pled not guilty the following day.

2

On May 20, 2003, the District Court denied Blair's motion.

¶6    The June 9, 2003, trial date passed without a trial being held although all witnesses had been subpoenaed. On July 7, 2003, Blair filed a "Motion to Expedite Trial Date and Re-set Trial." On July 9, 2003, the District Court treated Blair's motion as a Motion for Continuance and reset the trial for August 18, 2003, and again subpoenaed all witnesses.

¶7    On August 8 and 11, 2003, the State filed a second Amended Affidavit and Information, respectively, charging Blair with Intimidation, pursuant to § 45-5-203(2), and one count of Criminal Mischief, pursuant to § 45-6-101(1)(a), as opposed to two counts, to which Blair pled not guilty.

¶8    On August 15, 2003, Blair moved to dismiss for lack of speedy trial. On August 18, 2003, directly prior to trial, the District Court heard in-chambers oral argument and denied Blair's motion. The matter proceeded to trial.

¶9    The trial was held on August 18 and 19, 2003. Blair was acquitted of Intimidation and convicted of Criminal Mischief. He was sentenced on November 7, 2003, and judgment was entered November 25, 2003.

¶10   The Public Defender's Office moved to withdraw as counsel in the matter and moved to substitute counsel on appeal. Their motion was granted. On January 5, 2004, Blair filed a notice of appeal from the District Court's judgment.

STANDARD OF REVIEW

¶11   Whether a defendant has been denied a speedy trial constitutes a question of constitutional law. *City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290 Mont. 148, ¶ 18, 965

3

P.2d 866, ¶ 18 (citations omitted). We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *Bruce*, ¶ 18.

DISCUSSION

¶12 Blair argues that more than 275 days of the delay between his arrest and the trial date are attributable to the State as either intentional or institutional delay. As such, Blair contends, it was incumbent upon the State to prove he had not suffered prejudice while he sat in jail awaiting trial, the State failed to carry such burden, thus his right to a speedy trial was violated.

¶13 The State contends fewer than 275 days of the delay are attributable to it. The State argues Blair caused some of the delay and other delays have institutional reasons, which should not be weighed as heavily against it. As such, the State maintains, Blair bears the burden of proving he suffered prejudice because of the delays, he failed to carry his burden, thus, the District Court properly denied Blair's motion to dismiss for lack of speedy trial.

¶14 We analyze speedy trial claims based on the general guidelines established by the United States Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *Bruce*, ¶ 19. The *Barker* speedy trial test requires consideration of four factors: (1) length of delay; (2) reason for delay; (3) assertion of right to a speedy trial by the defendant; and (4) prejudice to the defense. *Bruce*, ¶ 19 *citing Barker*, 407 U.S. at 532, 92 S.Ct. At 2193, 33 L.Ed.2d at 118. No single factor by itself is decisive; courts must engage in a difficult and sensitive balancing process. *State v. Highpine*, 2000 MT 368, ¶ 14, 303 Mont. 422, ¶ 14, 15 P.3d 938, ¶ 14. We employ the balancing test enunciated in *Bruce*: The

greater the degree of fault by the State in causing the delay, the less the delay or prejudice that need be shown. *Highpine*, ¶ 14.

¶15     The State concedes the first *Barker* factor is satisfied here as the length of delay between Blair's arrest on September 10, 2002, and his trial August 18, 2003, exceeds 200 days, which is the minimum length of time required to trigger further speedy trial analysis. *See Bruce*, ¶ 55. The State further concedes the third *Barker* factor is satisfied here as Blair's assertion of the right to a speedy trial was made prior to the commencement of trial. The issue then encompasses the application of the second and fourth *Barker* factors.

REASON FOR DELAY

¶16     The second *Barker* factor to be considered is the reason for the delay, which requires us to attribute delay to either the State or the defendant on a case-by-case basis. *State v. Ray*, 2003 MT 171, ¶ 15, 316 Mont. 354, ¶ 15, 71 P.3d 1247, ¶ 15 (citation omitted). The length of delay determines which party carries the burden to prove prejudice caused by the delay. *See Ray*, ¶ 24. When 275 days or more of delay are attributable to the State, the State bears the burden of demonstrating the defendant was not prejudiced by the delay. *Bruce*, ¶ 56. When less than 275 days are attributable to the State, the burden remains on the defendant to demonstrate prejudice. *Bruce*, ¶ 56.

¶17     In the case *sub judice*, Blair argues we should determine the delay as that amount between the date of his arrest and his trial date, or 342 days, thus the State carries the burden to show he was not prejudiced by the delay. The State argues that some of the delay is attributable to Blair and we should determine the amount of time elapsed as either 119 days

or 273 days, which either way, does not meet the *Bruce* bright-line rule of 275 days. Blair counters that *Bruce* "does not assert any kind of bright line" rule and there is a nominal difference between the 273 days attributable to the State and the 275 day threshold established by *Bruce*.

¶18 There are three periods of delay that occurred from the date of Blair's arrest until his final trial date. The first delay from Blair's arrest on September 10, 2002, to the first trial date of January 6, 2003, totals 119 days. The parties agree these 119 days are institutional delays attributable to the State.

## THE SECOND DELAY

¶19 When deciding how many days of the delay are attributable to the State, an important consideration is whether the State's delay was intentional or institutional. *See State v. Haser*, 2001 MT 6, ¶ 26, 304 Mont. 63, ¶ 26, 20 P.3d 100, ¶ 26. Intentional delay exposes the defendant to "oppressive tactics of the prosecution." *Haser*, ¶ 26. Institutional delay is inherent in the criminal justice system and is caused by circumstances largely beyond the control of either the defendant or the State; it is most often caused by crowded court dockets and the corresponding difficulties in setting trial dates. *State v. Small* (1996), 279 Mont. 113, 118-19, 962 P.2d 1376, 1379. Institutional delay is attributable to the State, but weighs less heavily against it because the delay is not one the State actively pursued. *Highpine*, ¶ 16.

¶20 The second delay from the first scheduled trial date on January 6, 2003, to the second scheduled trial date on June 9, 2003, is 154 days. The parties agree these days are

6

attributable to the State, but disagree as to whether this delay should be characterized as institutional or intentional. Blair argues this delay is intentional and the State argues it is institutional.

¶21 We find it problematic that the record is void as to why no trial took place on January 6, 2003. It appears the District Court *sua sponte* continued the trial date as neither party filed a motion to continue nor was any hearing held. On February 7, 2003, the District Court issued an order stating the trial date had passed with no resolution, thus the trial was reset for June 9, 2003. The only other reference to the January 6, 2003, trial date is during the pre-trial in-chambers oral arguments on Blair's Motion to Dismiss, when the prosecutor stated that as a result of "problems in the Yellowstone County Public Defender's Office," Blair had three separate attorneys so it was unclear who was going to represent Blair at trial, therefore the trial had to be vacated and reset. The State also contends on appeal that "[t]he turmoil at that office during late 2002 and early 2003 is well known both to the public and to this Court" and thus, we should "take judicial notice that the second delay was occasioned by turmoil at the public defender's office and was not intentionally caused by the prosecutors." We decline to take such judicial notice. Should the State wish to assert institutional problems for neglecting their responsibility to diligently bring a case to trial, it should ensure such excuses are part of the District Court record.

¶22 Moreover, during the pre-trial in-chambers oral arguments on Blair's Motion to Dismiss, Blair's counsel stated: "regardless of the fact that I am in fact Mr. Blair's third attorney and that he had two before, he is in no way responsible for that. He's not

accountable for that, and certainly is entitled, regardless of personnel changes in the Yellowstone County Public Defender's Office, to a timely and effective representation." We agree with Blair's third defense counsel.

¶23 The State bears the burden of prosecution and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the State avoid dismissal for failure to timely prosecute him. *Bruce*, ¶ 63. Blair directs us to *State v. Barker* (1993), 261 Mont. 379, 383, 862 P.2d 1112, 1115, where there was nothing in the record to indicate the State "intentionally delayed the trial to gain some tactical advantage over Barker, or to harass him." There, although a review of the record yielded no evidence that the State attempted to reschedule the trial after the first two dates were continued by the court, and although the delay may have been unavoidable due to institutional reasons, we held "this does not mean that the State is relieved of its responsibility and the duty to bring an accused to trial in a timely manner." *State v. Barker*, 261 Mont. at 383, 862 P.2d at 1115. Where the record establishes only minimal justification or when the State is unable to demonstrate either compelling circumstances to warrant such a lengthy delay or that it diligently pursued bringing a case to trial, the delay weighs more heavily against the State. *State v. Barker*, 261 Mont. at 383-84, 862 P.2d at 1115. Here, there is no record of why the trial date was reset other than some vague references brought up on appeal that the Yellowstone Public Defender's Office was in disarray.

¶24 While the second delay here may not have been directly intentional, at a minimum, it was incumbent on the State to demonstrate it diligently pursued bringing Blair's case to

8

trial. They failed to do so, therefore, similar to *State v. Barker*, we conclude that, in this instance, the second delay of 154 days weighs heavily against the State.

## THE THIRD DELAY

¶25    The third delay from the scheduled trial date of June 9, 2003, to the actual trial date on August 28, 2003, is 69 days. On appeal, the parties disagree as to whether these days are attributable to the State or to Blair. During the pre-trial in-chambers oral arguments on Blair's Motion to Dismiss, Blair's counsel conceded "that the delay should fall upon us in terms of anything that happened between June 9th and today, August the 18th." The State argues this delay was assumed by Blair because in early June he entered into discussions concerning a plea agreement as noted in Blair's July 7, 2003, Motion to Expedite Trial Date and Reset Trial: "Mr. Blair had executed an Acknowledgment and Waiver in anticipation of a change of plea. Mr. Blair changed his mind, and has made a decision to exercise his right to trial." The District Court treated Blair's motion as a motion for continuance, granted it and reset the trial for August 18, 2003. Blair now asserts his counsel was incorrect in conceding these 69 days. While that concession and other ineffective assistance of counsel claims may be an argument appropriate for a petition for postconviction relief, for the purposes of this appeal, we accept Blair's earlier concession and attribute the 69 days to Blair.

## PREJUDICE

¶26    When at least 275 days of delay are attributable to the State, there is a rebuttable presumption of prejudice, under which the State has the burden of proving the defense was

9

not prejudiced by the delay. *State v. Johnson*, 2000 MT 180, ¶ 17, 300 Mont. 367, ¶ 17, 4 P.3d 654, ¶ 17 *citing Bruce*, ¶ 56. When the District Court denied Blair's Motion to Dismiss, Judge Todd stated: "I believe the 275 [days] is a significant line. The defense has 267 in its trial brief. Whatever the number of days is, it is close, but it is not at the 275, and that is important from a burden standpoint." We agree. Although the 154 days of the second delay weigh heavily against it, the total time attributed to the State is 273 days. 275 days is a bright line rule under *Bruce* and its progeny. Although the difference is nominal, Blair retains the burden to show he suffered prejudice as a result of the delay.

## PREJUDICE TO THE DEFENSE

¶27 Prejudice to the defense, for purposes of the *Barker* test, can be established based on any of the following four factors: (1) pretrial incarceration; (2) anxiety and concern to the defendant; and (3) impairment of defense. *Bruce*, ¶ 58.

## PRETRIAL INCARCERATION

¶28 We first consider pretrial incarceration, as to whether a defendant carries his burden to show he was unduly prejudiced by the delay. The State concedes Blair was incarcerated for 342 days from his arrest until his trial. Blair suggests his incarceration was especially oppressive in that he was locked down for 18 hours a day. The only reference to the lock-down is in his attorney's argument at the pre-trial in-chambers hearing on August 18, 2003. The State did not rebut his assertion. We do not find it necessary to determine whether or not Blair was in lock-down during his pretrial incarceration, nor would we be able to determine such an allegation based on the record presented to us. We do conclude Blair was

10

incarcerated nearly a year prior to trial, and although he has not proven the incarceration was intended to oppress, the fact of 342 days of pretrial incarceration suffices to establish this element in this case. *See Highpine*, ¶ 27.

ANXIETY AND CONCERN

¶29    The second factor to be considered is the amount of anxiety and concern caused by the pretrial delay. *State v. Boese*, 2001 MT 175, ¶ 15, 306 Mont. 169, ¶ 15, 30 P.3d 1092, ¶ 15. Anxiety and concern are an inherent part of being charged with a crime. *Boese*, ¶ 15 *citing Bruce*, ¶ 27. We have also noted that although a certain amount of anxiety and concern is inherent in being charged with a crime, the existence of anxiety and emotional distress is notoriously difficult to prove. *Small*, 279 Mont. at 120, 926 P.2d at 1380 *citing State v. Thompson* (1993), 263 Mont. 17, 33, 865 P.2d 1125, 1135.

¶30    Blair contends that while he sat in jail, "his world crumbled. He lost his job, his home and his marriage. He also suffered emotional distress." Blair asserts he was unable to appear in court during his marital dissolution hearing because he was incarcerated, causing a default judgment to be entered against him. The State concedes that Blair likely felt some anxiety during his incarceration, but the extent of his anxiety appears to be minimal, if at all, based on the facts of record. The State responds that while Blair lost his employment and home, these losses occurred prior to the first trial date, therefore any delay beyond that date should not play a factor as to whether Blair sustained any additional anxiety or concern. The State asserts that any anxiety Blair had regarding the dissolution by default is related to the dissolution itself, not the delay in trial. We agree with the State.

11

¶31 Although Blair claims he lost his job, his home, his marriage and suffered emotional distress, he has provided no evidence that these losses occurred as a result of his incarceration. Blair's wife filed for dissolution of marriage in late December of 2002, which was granted by default in February of 2003. However, Blair has the burden of proving he suffered anxiety as a result of the marital dissolution. Because of the crime Blair was incarcerated for–ramming into his wife's car with his pickup–for which he was found guilty of Criminal Mischief by a jury, we conclude he did not carry this burden.

IMPAIRMENT OF THE DEFENSE

¶32 Finally, we examine whether the delay caused any damage to Blair's defense. This factor is the most important one for determining prejudice. *See Bruce*, ¶ 19. Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because of time's erosion or exculpatory evidence and testimony can rarely be shown. *Boese*, ¶ 16 *citing Dogget v. United States* (1997), 505 U.S. 647, 655, 112 S.Ct. 2686, 2692-93.

¶33 Blair asserts he was prejudiced by his lengthy incarceration in that he was unable to investigate his case and assist in the preparation of his defense. He acknowledges it is unclear from the record as to whether the changes in his attorneys precipitated the delay or was caused by it. The State argues that we should decline to address Blair's impairment argument because he raises it for the first time on appeal. It further contends Blair has not shown any evidence that his defense was compromised. The District Court found it did not hear "any argument or evidence that would show that the defense has been impaired as far as witnesses being gone, evidence lost."

12

¶34  After a review of the record, we agree with the District Court. There is no evidence in the record that demonstrates Blair was unable to fashion a defense. He was represented by counsel throughout his incarceration, received a copy of the discovery, both civilian witnesses filed written statements and all witnesses who were subpoenaed for the first trial were subpoenaed for each subsequent trial date. There is no indication Blair suffered prejudice as a result of loss of witnesses, loss of memory or loss of evidence.

¶35  While Blair satisfied the pretrial incarceration element, he has not demonstrated he suffered anxiety and concern nor that his defense was impaired as a result of the delay. After balancing all four *Barker* factors and for the reasons above, we conclude the District Court did not err when deciding the State's delay was less than 275 days and as such, Blair bears the burden of proof to prove he was prejudiced, a burden he failed to carry. The District Court did not err when it denied Blair's motion to dismiss the charges against him for lack of a speedy trial. Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE