No. 04-332

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 279

STATE OF MONTANA,

      Plaintiff and Respondent,

   v.

DALE BOWSER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                     In and for the County of Silver Bow, Cause No. DC 01-155,
                     The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          W. M. Hennessey, Hennessey Law Offices, PLLC, Butte, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; Joslyn M. Hunt,
          Assistant Attorney General, Helena, Montana

          Robert M. McCarthy, Butte-Silver Bow County Attorney; Michael Clague,
          Deputy County Attorney, Butte, Montana

                           Submitted on Briefs:  October 11, 2005

                                  Decided:  November 8, 2005

Filed:

                                 Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Dale Bowser (Bowser) appeals his convictions from the District Court of the Second Judicial District, Silver Bow County, for criminal possession of dangerous drugs, a felony in violation of § 45-9-102(1), MCA (1999), and criminal possession of drug paraphernalia, a misdemeanor in violation of § 45-10-103, MCA (1999).  We affirm.

¶2    Bowser raises the following issues on appeal:

¶3    1.  Whether the State violated Bowser's right to a speedy trial.

¶4    2.  Whether Bowser's counsel's failure to object to the search warrant denied him effective assistance of counsel.

¶5    3.  Whether the District Court erred in admitting certain methamphetamine evidence.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6    Butte-Silver Bow police officers John David Christie (Christie) and Ed Lester (Lester) witnessed a forensic interview at St. James Community Hospital on February 8, 2001.  Two Department of Family Services employees were interviewing Bowser's minor children, Lane Bowser and Kyla Bowser, regarding an alleged sexual assault.  Lane and Kyla volunteered information during the interview regarding their father's drug use and the regular presence of drugs and paraphernalia in the home.

¶7    Officer Christie applied for and received a search warrant for Bowser's residence based on the information provided by Bowser's children.  The search revealed evidence of drug use, including a marijuana pipe and thirteen small baggies containing a powdery white substance.  The officers collected the evidence from Bowser's residence and sent it to the State Crime Lab for testing.  Annalivia Bishop (Bishop), a forensic chemist for the State

2

Crime Lab, tested one of the thirteen baggies and determined that it tested positive for methamphetamine.

¶8 The State charged Bowser with one count of felony criminal possession of dangerous drugs, one count of misdemeanor criminal possession of dangerous drugs, and one count of misdemeanor criminal possession of drug paraphernalia on September 19, 2001. Bowser filed a motion to dismiss for violation of his right to a speedy trial on September 3, 2003. The District Court held a hearing on the motion on October 29, 2003. The District Court denied the motion and jury trial commenced on December 1, 2003--a pretrial delay of 802 days.

¶9 The jury found Bowser guilty of felony criminal possession of dangerous drugs and misdemeanor criminal possession of drug paraphernalia. The District Court sentenced Bowser to two years in the custody of the Department of Corrections with all of the two years suspended. This appeal followed.

## STANDARD OF REVIEW

¶10 Whether a defendant has been denied a speedy trial presents a question of law. *State v. Bertolino*, 2003 MT 266, ¶ 10, 317 Mont. 453, ¶ 10, 77 P.3d 543, ¶ 10. We review a district court's legal conclusions to determine whether its interpretations are correct. *Bertolino*, ¶ 10. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review *de novo*. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, ¶ 12, 97 P.3d 1095, ¶ 12. We review rulings on the admissibility of evidence for an abuse of discretion. *State v. Damon*, 2005 MT 218, ¶ 12, 328 Mont. 276, ¶ 12, 119 P.3d 1194, ¶ 12.

3

**DISCUSSION**

¶11    **1.  Whether the State violated Bowser's right to a speedy trial**.

¶12    The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee a criminal defendant's right to a speedy trial.  We analyze speedy trial claims based on the general guidelines established by the United States Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *State v. Blair*, 2004 MT 356, ¶ 14, 324 Mont. 444, ¶ 14, 103 P.3d 538, ¶ 14.  We consider four factors under the *Barker* analysis: (1) length of delay; (2) reason for delay; (3) assertion of speedy trial right by the defendant; and (4) prejudice to the defense.  *Blair*, ¶ 14.

¶13    The State concedes that Bowser's claim satisfies the first three factors.  The State acknowledges that the District Court properly attributed more than 275 days to the State by reason of institutional delay.  The State therefore concedes that it bears the burden of proving that the delay did not prejudice Bowser.  *Blair*, ¶ 16.  The sole issue is thus whether the district court erred in determining that the State met its burden of showing that the delay did not prejudice Bowser.  A defendant can establish prejudice to the defense based on any of the following three factors: (1) pretrial incarceration; (2) anxiety and concern to the defendant; and (3) impairment of defense.  *Blair*, ¶ 27.

**Pretrial Incarceration**

¶14    The State argues that Bowser served 154 days of incarceration prior to the commencement of his trial in a federal prison regarding a separate offense, and thus no prejudice resulted from his pending charges in this case.  Bowser counters that his 154 days of incarceration prejudiced him.

4

¶15    Incarceration on different charges negates any prejudice from incarceration while awaiting trial. *State v. Gould* (1995), 273 Mont. 207, 217, 902 P.2d 532, 539; *State v. Hembd* (1992), 254 Mont. 407, 414, 838 P.2d 412, 416. Officers arrested Bowser on December 20, 2001, for violating the conditions of probation for a separate federal offense. The federal district court then resentenced Bowser to 154 days with the Bureau of Prisons. Bowser served this time while awaiting trial on the drug possession charges at issue here. Bowser's pretrial incarceration was for the separate federal charges, thus negating any prejudice in this case. *Gould*, 273 Mont. at 217, 902 P.2d at 539.

**Anxiety and Concern**

¶16    The State asserts that Bowser has failed to show that the delay aggravated his anxiety and concern above and beyond the fact of being charged with the crime in the first place. Bowser counters that he suffered anxiety and concern resulting from the pretrial delay. He further argues that he has been denied access to his children and the delay has caused his relationship with them to deteriorate.

¶17    Anxiety and concern are an inherent part of being charged with a crime. *State v. Jefferson*, 2003 MT 90, ¶ 32, 315 Mont. 146, ¶ 32, 69 P.3d 641, ¶ 32. We therefore consider the extent to which the pretrial delay aggravated a defendant's anxiety and concern. *Jefferson*, ¶ 32.

¶18    Dr. Tim Casey performed a mental health evaluation on Bowser at the State's request. The District Court referred to Dr. Casey's findings in its order denying Bowser's motion to dismiss on speedy trial grounds. Specifically, the court noted that Dr. Casey's psychological evaluation did not reflect a man suffering from great anxiety and concern. Dr. Casey

5

reported that Bowser was not particularly anxious and that Bowser's reported distress was over his divorce and placement of his children in foster care.

¶19 We must defer to district court findings unless they are clearly erroneous. *In re Marriage of Mease,* 2004 MT 59, ¶ 50, 320 Mont. 229, ¶ 50, 92 P.3d 1148, ¶ 50. A district court finding is clearly erroneous if it is not supported by credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves us with a definite and firm conviction that a mistake has been committed. *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, ¶ 24, 28 P.3d 467, ¶ 24. The District Court considered the results of Dr. Casey's psychological evaluation in concluding that Bowser was not unduly prejudiced by anxiety and concern from the delay. Bowser has failed to point to other factors to overcome this evaluation. We thus defer to the District Court's finding that the pretrial delay did not aggravate Bowser's anxiety and concern.

**Impairment of Defense**

¶20 The State finally asserts that Bowser's defense has not been impaired, as it had preserved all evidence through videotape, photographs, and written reports. Moreover, the State argues that all of Bowser's potential defense witnesses had been located and were available to testify at trial. Bowser contends that the pretrial delay prejudiced his defense. He makes general allegations that witnesses' memories are "necessarily impaired," and that he suffers from increased paranoia, causing impairment of his defense.

¶21 We analyze issues of evidence, witness reliability, and the defendant's ability to prepare a defense when determining whether pretrial delay impaired a defense. *Jefferson*, ¶ 36. We recognize that time may erode the accuracy of witness testimony and exculpatory

6

evidence. *Jefferson*, ¶ 36. Consequently, we give more weight to whether the defense has been impaired than any other basis for concluding that the defendant has been prejudiced by pretrial delay. *Jefferson*, ¶ 36.

¶22 The District Court determined that the passage of time had not impaired Bowser's defense. Officer Christie testified at the hearing on Bowser's motion to dismiss that the State had preserved all of the potential evidence in this case. Specifically, he testified that the videotapes of the children's interviews, the photographs of Bowser's residence, the photographs of the officers' actions while searching Bowser's residence, the contraband seized, Bishop's forensic report, and Officer Christie's personal report of actions he took the day he searched Bowser's residence were available for use at trial. Moreover, Officer Lester testified that he easily located all of Bowser's potential witnesses. He further testified that these witnesses were available to testify at trial and possessed an adequate memory of the events in question. The court therefore concluded that the State met its burden of showing that the pretrial delay had not impaired Bowser's defense.

¶23 We agree with the findings of the District Court. The State had preserved all of the physical evidence, and all of Bowser's witnesses were available to testify at the trial. Indeed, two of those witnesses did testify at trial. The State memorialized its evidence through written reports, videotape and photographs. Other than a general allegation that witnesses' memories are "necessarily impaired" and a claim of increasing paranoia, Bowser offers no evidence and cites no particular instances in which the pretrial delay impaired his defense. We thus affirm the District Court's order denying Bowser's motion to dismiss for violation of his right to a speedy trial.

¶24 **2. Whether Bowser's counsel's failure to object to the search warrant denied him effective assistance of counsel.**

¶25 Bowser argues that his counsel's failure to object to the search warrant obtained for the search of his residence denied him effective assistance of counsel. He asserts that the District Court would have sustained an objection to the warrant, and all evidence resulting from the search would have been ruled inadmissible. The State counters that Bowser's claim is better suited for consideration in post-conviction relief proceedings.

¶26 Ineffective assistance of counsel claims fall into two categories: record-based and non-record based. *State v. Earl*, 2003 MT 158, ¶ 39, 316 Mont. 263, ¶ 39, 71 P.3d 1201, ¶ 39. A party may raise only record-based ineffective assistance claims on direct appeal. *Earl*, ¶ 39. We distinguish record-based from non-record-based actions based on whether the record fully explains why counsel took, or failed to take, a particular course of action in providing a defense. *State v. White,* 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20. The claimant must raise a claim of ineffective assistance of counsel in a petition for post-conviction relief if the allegation cannot be documented from the record. *Earl*, ¶ 39.

¶27 Although the record is clear that Bowser's counsel failed to object to the search warrant, the record is silent on the question of why he chose not to object. Bowser's claim is therefore non-record based and inappropriate for direct appeal. We dismiss the ineffective assistance of counsel claim without prejudice to its being raised in a post-conviction relief proceeding. *State v. Hendricks*, 2003 MT 223, ¶ 12, 317 Mont. 177, ¶ 12, 75 P.3d 1268, ¶ 12.

¶28 **3. Whether the District Court erred in admitting certain methamphetamine evidence.**

¶29 Bowser argues that the District Court erred in admitting certain methamphetamine evidence because the State failed to establish a proper chain of custody. He argues that the District Court's exclusion from evidence of the marijuana pipe, shipped to the State Crime lab via UPS, likewise necessitated exclusion of the thirteen baggies, that also had been shipped to the State Crime Lab via UPS. The State counters that it met its burden of showing that a proper chain of custody existed with respect to the thirteen baggies.

¶30 The State bears the burden of showing a continuous chain of possession without any substantial change in the evidence while in its possession when identifying evidence by a chain of custody. *State v. Weeks* (1995), 270 Mont. 63, 75, 891 P.2d 477, 484. The burden then shifts to the defendant to show that the evidence has been tampered with while in the State's custody. *Weeks*, 270 Mont. at 75, 891 P.2d at 484. The State does not need to show that it possessed the evidence at all times; rather, the State must establish a continuous chain of custody. *Weeks*, 270 Mont. at 75, 891 P.2d at 485. For instance, the postal service or parcel carrier may have possession of evidence at times. This does not break the chain of custody. *Weeks*, 270 Mont at 76, 891 P.2d at 485. The State need only demonstrate to the court's satisfaction that no substantial change occurred in the evidence from the time that the State gathered it to the time that the State tested it or offered it into evidence. *Weeks*, 270 Mont. at 76, 891 P.2d at 485.

¶31 Officer Christie testified that the marijuana pipe was not in substantially the same condition as when he locked it into evidence. He testified that the top of the pipe was on

9

when he locked it into evidence. Officer Christie testified that at the time of trial, however, the top was off. Bishop, the State Crime Lab expert, testified that the top was off the pipe when she received and examined it. The pipe therefore was not in substantially the same condition at trial or when received for testing as when Officer Christie seized it from Bowser's residence. The District Court ruled that there had been a break in the chain of custody and correctly excluded the pipe from evidence.

¶32    In contrast, Officer Christie testified that he seized the thirteen baggies from Bowser's house and put them into an evidence bag. He further testified that he placed the baggies into an evidence locker at the police station. He then sent the baggies to the State Crime Lab. Bishop testified that she received the baggies in a manila envelope sealed with tamper resistant evidence tape. She further testified that there was no sign of tampering with the outer package, and that each package on the inside of the manila envelope was properly sealed. Bishop then analyzed one of the baggies for the presence of controlled substances. She further testified that following her analysis she sealed the envelope with tape from the State Crime Lab and affixed it with a sticker bearing the laboratory case number, the date the evidence was opened, and her signature. Bishop also testified that at the time of trial none of the bags' seals appeared to have been broken. The baggies were returned to the custody of Butte-Silver Bow Law Enforcement Agency following Bishop's analysis. Officer Christie testified that he received the baggies from the State Crime Lab and placed them back into the evidence locker where they remained until trial.

¶33    The testimony from both Officer Christie and Bishop demonstrates that the baggies were in substantially the same condition as they were when Officer Christie first seized

them.  The fact that UPS possessed the items at times does not break the chain of custody. *Weeks*, 270 Mont at 76, 891 P.2d at 485.  The State must show only that the evidence was in substantially the same condition at trial as when it was first seized.  *Weeks*, 270 Mont. at 76, 891 P.2d at 485.  The State has thus met its burden of showing a proper chain of custody for the thirteen baggies.  The District Court did not abuse its discretion in admitting the baggies into evidence.

¶34    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART