No. 05-639

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 54

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

CLEVE SPANG,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. 02-0222
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Patricia Bik, Attorney at Law, Helena, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Rod Souza,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  September 26, 2006

Decided:  February 27, 2007

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Cleve Spang appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on his convictions of driving under the influence of alcohol (DUI) and being a habitual traffic offender. Specifically, he appeals from the court's denial of his motion to dismiss for lack of a speedy trial. We affirm.

BACKGROUND

¶2     A Billings, Montana, police officer stopped Spang on suspicion of DUI in the early morning hours of March 17, 2002. Spang refused to provide a breath sample for a preliminary alcohol screening test. The State of Montana charged Spang with felony DUI (fourth offense) in violation of § 61-8-401, MCA; operating a motor vehicle without proof of insurance in violation of § 61-6-302, MCA; and operating a motor vehicle while a habitual traffic offender, in violation of § 61-11-213, MCA.

¶3     Spang made his initial appearance in the Yellowstone County Justice Court and was arraigned several days later, after the State filed an Information in the District Court setting forth the above-listed charges against him. The court appointed counsel to represent Spang in April, an omnibus hearing was held in May, and trial was set for September 3, 2002. Spang was incarcerated from his arrest in March until he posted bail on October 4, 2002.

¶4     Spang's trial date was reset four times. Spang's counsel requested--and received--two continuances for a total of approximately five months. Thereafter, the District Court twice reset Spang's trial to accommodate conflicts in its calendar, rescheduling trial for April and then for June of 2003.

2

¶5      On the morning of Spang's jury trial, but prior to trial, Spang's counsel moved to dismiss on grounds that Spang had been denied his right to speedy trial.  The court immediately held a hearing on the motion and denied it.  The District Court also accepted Spang's guilty plea to the habitual traffic offender charge and, upon the State's motion, dismissed the charge of operating a motor vehicle without proof of insurance.  The jury subsequently found Spang guilty of DUI.  The District Court sentenced Spang and entered judgment.

¶6      After Spang filed his notice of appeal, the parties stipulated that more than 275 days of trial delay were attributable to the State and jointly moved for remand to the District Court for an evidentiary hearing, with the State having the burden of showing Spang was not prejudiced by the delay.  We granted the motion.  After a hearing on remand at which the parties each presented several witnesses, the District Court again denied Spang's motion to dismiss.  Spang appeals.

STANDARD OF REVIEW

¶7      A criminal defendant's claimed violation of the right to a speedy trial presents a question of constitutional law.  We review a trial court's resolution of such questions for correctness.  *State v. Bowser*, 2005 MT 279, ¶ 10, 329 Mont. 218, ¶ 10, 123 P.3d 230, ¶ 10 (citation omitted).  We will not disturb findings underlying a district court's speedy trial ruling unless the findings are clearly erroneous.  *Bowser*, ¶ 19 (citation omitted).

DISCUSSION

¶8      **Did the District Court err in determining there was no prejudice to Spang as a result of trial delay and in concluding his constitutional right to a speedy trial was not**

3

**violated?**

¶9 Both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee a criminal defendant the right to a speedy trial. Spang asks us to reverse his convictions of DUI and habitual traffic offender, and to dismiss those charges based on violation of his right to speedy trial.

¶10 Speedy trial claims generally are analyzed based on the guidelines set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972). The four factors a court considers under the *Barker* analysis are (1) length of the delay; (2) reasons for the delay; (3) assertion of speedy trial right by the defendant; and (4) prejudice to the defendant. *City of Billings v. Bruce*, 1998 MT 186, ¶ 19, 290 Mont. 148, ¶ 19, 965 P.2d 866, ¶ 19 (citation omitted).

¶11 In *Bruce*, we modified the *Barker* speedy trial test by providing specific time parameters which trigger a speedy trial analysis and assigning the burden of proof regarding the prejudice factor depending on the reasons for the delay. *Bruce*, ¶¶ 54-58. We determined that when at least 275 days of pretrial delay are attributable to the State, the burden is on the State to demonstrate that the defendant has not been prejudiced by the delay; if the State meets its burden, the burden shifts to the defendant to demonstrate prejudice. The trial court must weigh the evidence of each party. *See Bruce*, ¶ 56.

¶12 In this case, it is undisputed that the only speedy trial factor at issue is the fourth *Barker* factor, prejudice. The prejudice factor involves consideration of pretrial incarceration, anxiety and concern of the defendant, and impairment to the defense. The most important of these is impairment to the defense, because the inability of an accused to

4

adequately prepare his case skews the fairness of the entire system. *Bruce*, ¶¶ 19, 58 (citation omitted).

¶13   Spang contends on appeal that the State failed to carry its burden of proof on the prejudice factor.   As stated above, the District Court held two hearings on the motion to dismiss.  The court conducted the pretrial hearing as if Spang bore the burden of proof and, consequently, Spang presented his case first.  At the hearing on remand, the reverse was true. We discuss the evidence presented at both hearings on each of the three prejudice considerations in turn.

¶14   Pretrial incarceration.  The right to a speedy trial is not intended to prevent all pretrial incarceration.  It is designed to prevent oppressive pretrial incarceration.  *State v. Longhorn,* 2002 MT 135, ¶ 36, 310 Mont. 172, ¶ 36, 49 P.3d 48, ¶ 36 (citation omitted).

¶15   Spang was incarcerated for approximately seven months after his arrest.  From October 4, 2002, until his trial in early June of 2003, he was not incarcerated.

¶16   At the pretrial hearing, Spang testified he did not believe his prior DUI convictions impeded him from obtaining employment.  He testified that his driver's license had been revoked prior to his arrest and the revocation was extended until at least March of 2003 as a result of his refusing to take a breath test in this case, but he nevertheless had been employed as an interstate truck driver until his arrest in this case.  The thrust of this testimony was that the seven-month incarceration was oppressive because it prevented Spang from being employed.

¶17   The State submitted Spang's certified driving record, which established that he had

been declared a habitual traffic offender in July of 1999 and convicted of driving while adjudicated a habitual offender in February of 2000. A person who has been declared a habitual traffic offender may not be issued a driver's license for three years. Section 61-11-212, MCA. Conviction of driving while declared a habitual offender results in an extension of the period of license revocation for up to an additional year. Section 61-11-213, MCA. Spang's certified driving record indicates his license had been revoked until July 19, 2003. The trial court noted that Spang "wasn't supposed to be driving [at the time of this offense], under any circumstances." Nor could he legally drive during the period of his incarceration.

¶18 The second hearing on Spang's speedy trial motion began with testimony for the State by the Billings police officer who arrested Spang for the offenses charged in this case. The officer testified that, because Spang's driver's license was already revoked through July 19, 2003, at the time he was arrested, he could not legally work as a truck driver then or through the time of trial. The officer also testified that Spang refused to take a breath test at the time of this arrest, the penalty for which is suspension of the driver's license for six months to one year. The Yellowstone County Attorney's Office victim witness coordinator testified that Spang's bond was originally set at $10,000, reduced to $5,000 and reduced again to $2,500. Spang then bonded out of jail.

¶19 Spang testified that, as a direct result of his arrest and seven months of incarceration, he lost his job as a commercial truck driver. He also testified that his pretrial incarceration from March to October of 2002 forced him to forego an opportunity for training as a heavy

6

equipment operator which, in turn, prevented him from providing support for his young child and hiring a good attorney, and resulted in his loss of his apartment and all his personal effects.

¶20 Spang's evidence of his financial difficulties during his pretrial incarceration is undercut by the evidence that any driving by him prior to or after his arrest was illegal. On cross-examination, Spang admitted he did not have a valid driver's license before his arrest because of his previous habitual traffic offender conviction. He admitted having three previous DUIs. He also admitted being 21 months in arrears on his child support payments at the time of his sentencing, some of which arrearage accrued before his arrest in this case.

¶21 The District Court did not expressly find that Spang's pretrial incarceration was, or was not, oppressive. The court's only findings addressing pretrial incarceration were that Spang was in jail for almost seven months and that the bond was "anything but onerous in this case." The record supports these findings, which are not otherwise clearly erroneous.

¶22 Anxiety and concern. This Court has recognized that a certain amount of anxiety and concern is inherent in a criminal charge. The focus must be on the anxiety which is aggravated as a result of the delay. *See State v. Williams-Rusch*, 279 Mont. 437, 452, 928 P.2d 169, 178 (1996) (citation omitted). Spang asserts he had anxiety and concern about being unable to support his son and his son's mother, about losing his possessions when he could not pay his rent as a result of his pretrial incarceration, and about being unable to assist with his own defense.

¶23 At the second speedy trial hearing, the State reminded the District Court that Spang

7

had waived his right to speedy trial for purposes of his first motion for a trial continuance. The trial court found that a certain amount of anxiety and concern is inevitable from the fact of being charged, but that there was no evidence the delay had exacerbated that anxiety and concern. The record supports these findings and they are not otherwise clearly erroneous.

¶24 Impairment of the defense. Inquiry into whether the defense has been impaired--the most important prejudice factor--focuses on issues of evidence, witness reliability and the defendant's ability to prepare a defense. *State v. Jefferson*, 2003 MT 90, ¶ 36, 315 Mont. 146, ¶ 36, 69 P.3d 641, ¶ 36.

¶25 At the first speedy trial hearing, Spang's counsel told the District Court that, in his opinion, the most significant impairment to the defense would be the memories of the witnesses. Counsel acknowledged, however, that he was unaware of any problems with witnesses for the defense as a result of the delay. At the beginning of the second speedy trial hearing, the State reminded the District Court of that testimony.

¶26 At the second hearing, the police officer who had arrested Spang testified that the entire arrest was captured on video, with audio, and that his memory was not clouded so as to impair his ability to testify truthfully. He testified that Spang did not mention any problems with his vehicle during or after the arrest. The victim witness coordinator testified this case did not involve a situation in which any witness for the State became unavailable, and that she had not been served with notice of any potential defense witnesses.

¶27 Spang testified his defense was impaired by the trial delay in that he lost track of a witness, Tory Bixby, a fellow truck driver with whom he had been drinking before his arrest.

8

Spang testified that an off-duty police officer directed racial slurs at him in the bar where he was drinking before his arrest, and that Bixby both heard those slurs and could testify that Spang was not impaired by alcohol that evening. In response to the District Court's inquiry, Spang said Bixby was not with him when he was arrested, however. Spang also testified that, because he was unable to get his bond reduced, he was unable to pay the retainer for the attorney of his choice and had to use a court-appointed public defender. Finally, Spang testified that his car had mechanical problems and was not idling properly on the night he was arrested, causing it to lurch forward or stall. He testified that his defense was impaired by the trial delay in that he lost track of the car while he was in jail and was never able to recover it.

¶28 The State cross-examined Spang regarding his post-trial contentions with regard to impairment of his defense. Spang admitted he had not alerted the court regarding his wish to locate Bixby until the remand from this Court, long after his first speedy trial hearing and his trial. He also admitted he previously had not mentioned mechanical problems with his vehicle, and acknowledged that the mechanical problems he asserted caused his vehicle to lunge forward, but not to swerve and "bounc[e] off curbs," which is what the arresting officer observed before stopping him.

¶29 At the end of the hearing on remand, the District Court stated that this was the first it had heard of Spang's car problems or of potential witness Bixby. The court stated the "sick car" was of no consequence because, even if Spang had a car that lunged, that would not render the investigative stop invalid, and the stop led to further observations by the officer

9

which resulted in the DUI charge. As to inability to locate Bixby, the court pointed out that, although Spang was out of jail in October of 2002, some eight months before his trial the following June, nothing in the record indicated Bixby would have been a witness or could not be located for trial. The District Court found that, although Spang claimed he was denied the opportunity to earn sufficient funds through his employment to hire the attorney of his choice, he was out of jail and working for eight months before trial and still did not retain his attorney of choice.

¶30 Implicit in the District Court's ruling is a determination that the State's cross-examination of Spang successfully carried the State's burden of rebutting his belated assertions concerning the effect of the delay on his ability to prepare a defense. The District Court was entitled to weigh the evidence (*see State v. Highpine*, 2000 MT 368, ¶ 21, 303 Mont. 422, ¶ 21, 15 P.3d 938, ¶ 21) and, based on this record, we ascertain no error in this regard. Thus, we hold the District Court properly concluded the State satisfied its burden of demonstrating that Spang was not prejudiced by the institutional delay in bringing his case to trial.

¶31 Spang contends the facts and circumstances of this case parallel those presented in *State v. Kipp*, 1999 MT 197, 295 Mont. 399, 984 P.2d 733. In *Kipp*, the defendant asserted that her defense was impaired by the delay in the case because the only eyewitness to the crimes disappeared during the delay. We reversed her conviction and ordered the charges against her dismissed, based on the loss of a main witness as a result of delay attributable to the State. *Kipp*, ¶¶ 23, 30. Unlike the defendant in *Kipp*, however, Spang has not established

10

that a primary defense witness--or, indeed, any witness he had intended to call at any of his trial settings--was unavailable as a result of the pretrial delay in this case.

¶32    We hold that the record supports the District Court's findings and the court correctly interpreted and applied the *Barker/Bruce* test for alleged speedy trial violations in determining there was no prejudice to Spang as a result of trial delay and in concluding his constitutional right to a speedy trial was not violated.

¶33    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JAMES C. NELSON

11