No. 00-500

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 111

IN THE MATTER OF
A.G.,

A Youth.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

          For Appellant:

          Sasha K. Brownlee, Great Falls, Montana

          For Respondent:

          Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant
          Montana Attorney General, Helena, Montana; Brant Light, Cascade County
          Attorney, Great Falls, Montana

                                        Submitted on Briefs: May 2, 2002

                                        Decided: May 23, 2002

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     A.G. appeals an order of the District Court for the Eighth Judicial District, Cascade County, denying his motion to dismiss his conviction of felony theft by accountability for lack of a speedy trial.  We reverse and remand for further proceedings consistent with this Opinion.

¶2     A.G. raises the following issue on appeal:  Whether the District Court erred when it determined that A.G.'s right to a speedy trial had not been violated.

## Factual and Procedural Background

¶3     On August 10, 1998, the Deputy County Attorney for Cascade County filed a Youth Court Petition charging 14-year-old A.G. with four offenses.  Count I of the petition alleged that on July 1, 1998, A.G. "solicited, aided, abetted, agreed, or attempted to aid" in the commission of felony theft of a vehicle in violation of § 45-6-301, MCA.  Count II alleged that on March 24, 1998, A.G. committed felony theft of a vehicle in violation of § 45-6-301, MCA.  Count III alleged that on June 28, 1998, A.G. was reported to be a runaway in violation of §§ 41-5-103(26) and (42)(b), MCA (1997).  Count IV alleged that  on June 28, 1998, A.G. violated Great Falls City Ordinance 9.64.010 by remaining out after curfew without the company of a parent, guardian, or other responsible adult.

¶4     On July 1, 1998, the day of A.G.'s arrest on the charge of theft by accountability, a detention hearing was held in Justice Court.  The court released A.G. to the custody of his mother, S.G.  Besides placing A.G. under the supervision of his mother, the court imposed no

2

other conditions upon A.G. The Justice Court did order Youth Court Services to conduct a preliminary investigation and to prepare a report for the court.

¶5 Juvenile Probation Officer Dennis Dronen conducted the preliminary investigation and met with both A.G. and S.G. At that time, S.G. informed Dronen that she was hoping to get a job on the Fort Belknap Indian Reservation near Harlem, Montana. A.G. and S.G. subsequently moved to Harlem, but they failed to inform the juvenile probation office of their new address.

¶6 Dronen submitted a preliminary investigation report on July 22, 1998. Thereafter, Juvenile Probation Officer Paul Broquist was assigned to the case. On August 4, 1998, Broquist referred the case to the Cascade County Attorney's Office and the Youth Court Petition was filed the following week.

¶7 After the petition was filed, the District Court issued a summons to A.G. and S.G. ordering them to appear at a hearing on August 27, 1998, to answer the allegations in the petition. A copy of the petition was attached to the summons. The petition and summons listed their Great Falls address. Prior to the hearing, Broquist attempted to locate A.G. at his Great Falls address, but he discovered that A.G. no longer lived there.

¶8 A.G. and S.G. failed to appear at the August 27, 1998 hearing. Broquist informed the District Court that they had moved and had left no forwarding address or telephone number. Consequently, the court granted the State's request for a "pickup order" for A.G.

¶9 In early October 1998, S.G. contacted Broquist regarding A.G.'s case. Broquist informed S.G. that she and A.G. had already missed one hearing and that he would like them

3

to return to Great Falls so that he could serve them with the court papers. On October 30, 1998, S.G. and A.G. met with Broquist in Great Falls at which time Broquist served them with a copy of the summons, the Youth Court Petition, and the affidavit in support of the petition. Broquist later testified that he did not tell A.G. and S.G. about the pickup order, nor did he attempt to take A.G. into custody, because he was unaware that the court had issued the order. However, S.G. testified that Broquist did tell her there was an outstanding pickup order for A.G.

¶10 Broquist failed to inform the Cascade County Attorney's Office of A.G.'s whereabouts until June 14, 1999. Immediately upon receiving notification of A.G.'s current address, the Deputy County Attorney handling A.G.'s case moved the District Court to set an answer hearing. The court granted the State's motion and set the hearing for July 15, 1999.

¶11 On the day set for the hearing, A.G. and his counsel appeared in the District Court. A.G. answered "not true" to the four counts in the petition. The District Court released A.G. and scheduled a status conference for August 12, 1999. A.G. failed to appear at that conference and the State requested another pickup order. A.G.'s counsel requested a continuance and the District Court reset the status conference for August 26, 1999.

¶12 At the status conference, A.G. informed the District Court of his desire to proceed to trial. Consequently, a bench trial was subsequently set for November 8, 1999. A.G. also informed the court that he was going to file a motion to dismiss for lack of a speedy trial. A.G. filed said motion on September 8, 1999.

¶13    On September 20, 1999, the State moved to dismiss Count II of the petition because the charge of felony theft had already been taken care of by the Youth Justice Council. The District Court granted the State's motion and dismissed the charge.

¶14    On October 14, 1999, the District Court conducted a hearing on A.G.'s motion to dismiss for lack of a speedy trial. A.G. did not testify at the hearing. At the conclusion of the hearing, the District Court allowed A.G.'s counsel to submit further briefing on the speedy trial issue. The trial set for November 8, 1999, was later vacated awaiting the court's determination of A.G.'s motion to dismiss.

¶15    On January 21, 2000, the District Court issued its written order denying A.G.'s motion. In its order, the court concluded that the State was only responsible for 229 days of the delay, thus the burden of showing prejudice was on A.G. The court also concluded that A.G. failed to show that he was prejudiced by the delay in his case.

¶16    Thereafter, on February 17, 2000, A.G. pleaded true to the charges of theft by accountability, being a runaway, and violating curfew. A.G. reserved the right to appeal the denial of his motion to dismiss for lack of a speedy trial. In its Dispositional Order filed April 26, 2000, the District Court designated A.G. a serious juvenile offender as defined by § 41-5-103(32), MCA (1999). The court sentenced A.G. to formal probation until he reaches the age of twenty-one and ordered him to pay restitution.

**Standard of Review**

¶17    The violation of a defendant's right to a speedy trial is a question of constitutional law which requires that we review a district court's decision to determine if it is correct. *State v.*

5

*Haser*, 2001 MT 6, ¶ 17, 304 Mont. 63, ¶ 17, 20 P.3d 100, ¶ 17 (citing *State v. Taylor*, 1998 MT 121, ¶ 18, 289 Mont. 63, ¶ 18, 960 P.2d 773, ¶ 18).

## Discussion

*¶18    Whether the District Court erred when it determined that A.G.'s right to a speedy trial had not been violated.*

¶19    A criminal defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article II, Section 24 of the Montana Constitution. Juvenile defendants in Montana have the same rights as adults pursuant to Article II, Section 15 of the Montana Constitution.

¶20    In determining whether a defendant has been denied the right to a speedy trial, this Court, in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, established a four-part balancing test based on the test set forth by the United States Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The test established in *Bruce* requires that a court consider the following four criteria when examining speedy trial questions: (1) the length of the delay from the time charges are filed until the defendant's trial date; (2) the reason for the delay; (3) whether the defendant's right to a speedy trial was timely asserted; and (4) the prejudice to the defense caused by the delay. *Bruce*, ¶¶ 55-58.

¶21    As to the first criteria, the length of the delay, we established in *Bruce* that any delay over 200 days triggers further speedy trial analysis. *Bruce*, ¶ 55. As the District Court noted in its January 20, 2000 order denying A.G.'s motion to dismiss, the clock for speedy trial begins to run when a youth becomes an "accused" in a youth court proceeding. *State v.*

6

*Daniels* (1991), 248 Mont. 343, 348-49, 811 P.2d 1286, 1289. The clock began to run in this case when the State filed the Youth Court Petition on August 10, 1998. However, the District Court mistakenly calculated the time from August 10, 1998, to the date of A.G.'s trial, November 8, 1999, as 392 days. In actuality, it is 455 days and, either way, the length of delay is sufficient to warrant further speedy trial analysis under *Bruce*.

¶22    In examining the second criteria, the reason for the delay, we must specifically allocate the periods of delay to either the State or the defendant. Any delay that is institutional or is caused directly by the State, is attributed to the State. *State v. Small* (1996), 279 Mont. 113, 118-19, 926 P.2d 1376, 1379. We concluded in *Bruce* that when it has been demonstrated that 275 days of the delay is attributable to the State, the burden should shift to the State to demonstrate that the defendant has not been prejudiced by the delay. *Bruce*, ¶ 56. Here, the District Court attributed only 229 days of delay to the State and concluded that since that number is less than 275 days, A.G. had the burden of showing prejudice. We hold that the District Court's allocation of time in this matter is incorrect and, consequently, the burden of showing prejudice fell upon the State.

¶23    In making its determination, the District Court divided the delay in this case into four segments and allocated that time between the State and A.G. While we agree with the court's determination as to the first, second and fourth segments, we disagree with the court's determination in the third segment. In the first segment, the court attributed the time from the date the Youth Court Petition was filed until the first hearing in this case, August 27, 1998, to the State as institutional delay. In the second segment, the court attributed the time from the

7

date of that first hearing until October 30, 1998, when S.G. and A.G. returned to Great Falls to meet with Broquist, to A.G. because A.G. failed to notify Broquist or the County Attorney's Office that he had moved. In the third segment, the court attributed one half of the time from October 30, 1998, to July 15, 1999, when A.G. appeared for a hearing in this matter, to A.G. and one half to the State. And, in the fourth segment, the court attributed the time from July 15, 1999, until A.G.'s trial date of November 8, 1999, to the State as institutional delay.

¶24    Our disagreement with the District Court's allocation of time involves the third segment where the court attributed one half of the delay to A.G. and one half to the State. The first error in this segment occurred when the court calculated the time from October 30, 1998, to July 15, 1999, as 196 days. The actual length of time between those two dates is 258 days. The second error occurred when the court attributed half of that time to the State and half to A.G. In doing so, the court reasoned, and we agree, that, under §§ 41-5-1703 and 41-5-1401(1), MCA, the State uses probation officers to serve juveniles and their parents with petitions, affidavits and summonses. In that role, a probation officer is an agent of the State despite their statutorily defined role as a member of the Court. Section 41-5-103(43), MCA. Thus, the court correctly imputed Broquist's knowledge of A.G.'s whereabouts as of October 30, 1998, to the State.

¶25    We disagree, however, with the District Court's determination that § 41-5-1404(3), MCA, placed upon A.G. and S.G. the responsibility to file a request to reset the August 27, 1998 answer hearing. This statute provides, in pertinent part:

8

**Service of summons.** (1) Any youth who is the subject of a proceeding under this chapter must be personally served with summons at least 5 days before the time stated for appearance.

(2) Service of summons on all other persons designated in 41-5-1403(1) shall be made in accordance with Rule 4D of the Montana Rules of Civil Procedure, except that in all cases service shall be completed at least 5 days before the time stated for appearance.

(3) If a party referred to in subsection (2) herein is not personally served before a hearing and has not secluded himself with an attempt to delay or disrupt any proceeding, such party *may appear* within a reasonable time subsequent to the hearing and, on motion to the court, request a rehearing. The motion may be granted at the discretion of the judge if a rehearing would be in the best interest of the youth.

Section 41-5-1404, MCA (emphasis added).

¶26 First, A.G. was not "personally served" before the hearing. Second, there is no evidence that either A.G. or S.G. "secluded" themselves in an attempt to delay or disrupt the proceedings. Third, because A.G. and S.G. did not appear on August 27, 1998, the hearing scheduled for that day did not go forward and there can be no "rehearing" if there has not yet been a hearing. Fourth, by its own terms, § 41-5-1404(3), MCA, is permissive, not mandatory, when it states that the party "may" appear. And, finally, it is up to the State to move the case towards prosecution and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the State avoid dismissal for failure to timely prosecute. *Bruce*, ¶ 63 (citing *State v. Tweedy* (1996), 277 Mont. 313, 318-20, 922 P.2d

9

1134, 1137-38). The State failed to do so here because of a miscommunication between the Juvenile Probation Office and the Office of the County Attorney.

¶27 Therefore, we hold that the entire 258 days of delay in this third segment is attributable to the State, making the total delay attributable to the State equal to 391 days. Because, contrary to the District Court's determination, the delay attributable to the State is greater than 275 days, the State has the burden of showing that A.G. was not prejudiced by the delay.

¶28 In examining the third criteria, whether the defendant's right to a speedy trial was timely asserted, we note that A.G. filed his motion to dismiss for lack of a speedy trial on September 8, 1999, more than two months prior to the scheduled trial date. We held in *Bruce* that if the right to a speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third prong is satisfied. *Bruce*, ¶ 57.

¶29 In examining the fourth criteria, prejudice to the defense caused by the delay, we stated in *Bruce* that prejudice sufficient for a dismissal can be established based on any one or more of the following factors: (1) pretrial incarceration, (2) anxiety and concern to the defendant, and (3) impairment of the defense. *Bruce*, ¶ 58. As we have already noted in this Opinion, the District Court mistakenly placed the burden of proving prejudice on A.G. when, in actuality, the State had the burden of proving lack of prejudice. While the State argues in its brief on appeal that there was no prejudice, that fact needs to be proven at a hearing where

A.G. has the opportunity to cross-examine the State's witnesses and to present evidence in rebuttal.

¶30    Accordingly, we remand this case to the District Court for a hearing to determine whether A.G. was prejudiced by the 455-day delay in this case, noting once again that it is the State's burden to prove at that hearing that A.G. was not prejudiced by the delay.

¶31    Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE