DA 06-0753

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 326

STATE OF MONTANA,

   Plaintiff and Appellant,

 v.

BERNARD RICHARD BILLMAN,

   Defendant and Appellee.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 06-0089
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Hon. Mike McGrath, Montana Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

     Dennis Paxinos, Yellowstone County Attorney; David Carter, Deputy
County Attorney, Billings, Montana

   For Appellee:

     Jim Wheelis, Chief Appellate Defender; Shannon McDonald, Assistant
Appellate Defender, Tammy Hinderman, Legal Intern, Helena, Montana

       Submitted on Briefs: March 12, 2008

          Decided: September 23, 2008

Filed:

          _____
              Clerk

Justice W. William Leaphart delivered the Opinion to the Court.

¶1     The State of Montana appeals from the District Court's order granting Bernard Richard Billman's motion to dismiss for violation of his right to speedy trial in the Thirteenth Judicial District, Yellowstone County. We affirm.

¶2     We restate the issue as follows:

¶3     Did the District Court err when it granted Billman's motion to dismiss for violation of his speedy trial right?

## BACKGROUND

¶4     On January 27, 2006, Bernard Richard Billman (Billman) was arrested and jailed for driving under the influence of alcohol, a felony; driving while his driving privileges were suspended or revoked, a misdemeanor; and operating a motor vehicle without proof of liability insurance, a misdemeanor. The District Court set Billman's bond at $7,000 and set Billman's trial for June 19, 2006.

¶5     The District Court signed an order on June 29, 2006, continuing Billman's trial date to August 21, 2006, based on conflicts in the court's docket. On August 25, 2006, the State moved to reset the trial for a date after October 1, 2006, because the State's primary witness, the arresting officer, was unavailable due to training. The District Court then set a trial date for October 30, 2006, but later changed the date to November 1, 2006, due to docket control.

¶6     On October 30, 2006, the prosecutor, defense counsel, and Billman appeared in court for a hearing on pretrial motions. Defense counsel orally moved to dismiss the case

2

based on a violation of Billman's speedy trial right. The District Court set a hearing on the motion for November 1, 2006, and rescheduled the trial date for December 4, 2006.

¶7 On November 1, 2006, the District Court orally granted Billman's speedy trial motion and released Billman from incarceration. The State subsequently appealed. While the State's appeal was pending, we established a new framework for evaluating speedy trial claims in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. In light of the *Ariegwe* decision, we remanded this case to the District Court to enter findings of fact and conclusions of law pursuant to the *Ariegwe* analysis. The District Court conducted a speedy trial analysis and again granted Billman's motion to dismiss for violation of his right to speedy trial. The State appeals.

## STANDARD OF REVIEW

¶8 Whether a defendant has been denied the right to a speedy trial presents a question of constitutional law. *Ariegwe*, ¶ 119. We review de novo a district court's legal conclusions to determine whether the court correctly interpreted and applied the law. *Ariegwe*, ¶ 119. We will not disturb the factual findings underlying a speedy trial ruling unless the findings are clearly erroneous. *Ariegwe*, ¶ 119. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court committed a mistake. *Ariegwe*, ¶ 119.

**DISCUSSION**

¶9 **Did the District Court err when it granted Billman's motion to dismiss for violation of his speedy trial right?**

¶10 The State maintains that the District Court erred in granting Billman's motion to dismiss under speedy trial grounds. The State acknowledges that the underlying facts are "straightforward and mostly undisputed," but argues that the District Court failed to engage in the balancing process that *Ariegwe* and *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972) require.

¶11 The United States Constitution and the Montana Constitution guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Mont. Const. art. II, § 24. Our test to determine whether an accused has been denied the right to speedy trial rests on the Montana Constitution. *Ariegwe*, ¶ 35. We consider four factors when presented with a speedy trial claim: the length of the delay, the reasons for the delay, the accused's responses to the delay, and prejudice to the accused. *Ariegwe*, ¶¶ 106-111. We then balance the four speedy trial factors to determine whether the accused has been denied the speedy trial right. *Ariegwe*, ¶ 112. Each factor's significance varies based on the particular case's unique facts and circumstances. *Ariegwe*, ¶ 105.

¶12 A. The speedy trial factors

4

## 1. The length of the delay

¶13    The State argues that the District Court incorrectly analyzed the first speedy trial factor.  The State maintains that the short delay between the speedy trial triggering date and the trial date did not weigh in favor of Billman's speedy trial motion.

¶14    A court addressing a speedy trial claim must first determine whether 200 days have elapsed between the accusation and the trial date.  *Ariegwe*, ¶ 41.  If this 200-day threshold passes, a presumption of prejudice arises that pretrial delay has prejudiced the accused.  *Ariegwe*, ¶ 56.  A court must then consider the delay extending beyond the 200-day trigger date.  *Ariegwe*, ¶ 62.  As the pretrial delay increases, the presumption increases that the delay has prejudiced the accused and the State's burden to justify the delay under the second speedy trial factor increases.  *Ariegwe*, ¶ 62.

¶15    The District Court determined that the delay exceeded 200 days and that the first factor thus weighed in favor of granting Billman's speedy trial motion.  The court relied on two calculations to determine the amount of delay: (1) the interval between the triggering date and the date that the court granted Billman's motion to dismiss, which the District Court calculated to be seventy-seven days, and, alternatively, (2) the interval between the accusation and the date of the court's second order dismissing Billman's case, which the District Court calculated to be 711 days.  Regarding the court's second calculation, any delay associated with the State's initial appeal bears no relevance to Billman's speedy trial claim.  Following the court's order, no criminal charges were pending against Billman, nor was he subjected to actual restrictions on his liberty, and

5

thus, the speedy trial guarantee no longer applied. *U.S. v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982); *U.S. v. Loud Hawk*, 474 U.S. 302, 310-11, 106 S. Ct. 648, 653-54 (1986).

¶16 Though the District Court correctly determined that further speedy trial analysis had been triggered, the court failed to examine the intensifying effect of the delay beyond the triggering date. To examine the intensifying effect, a court must first determine the proper speedy trial timeframe; courts generally consider the interval between accusation and the scheduled trial date or the date on which an accused pleads guilty, whichever date reflects the case's disposition. *Ariegwe*, ¶ 43; *State v. Ellenburg*, 2000 MT 232, ¶ 16, 301 Mont. 289, ¶ 16, 8 P.3d 801, ¶ 16. In this case, the District Court's order granting Billman's speedy trial motion disposed of the case, and thus, the date that the court ruled on Billman's speedy trial motion reflects the case's disposition.

¶17 We acknowledge our statement in *Ariegwe* that, "the interval between accusation and trial runs not to the date on which the accused's speedy trial motion is considered by the court but, rather, to the scheduled trial date" or the date on which an accused pleads guilty, whichever date represents the case's disposition. *Ariegwe*, ¶ 43 (citations omitted). This statement remains true when a court denies a speedy trial motion because the denial does not dispose of the case. *See State v. Kipp*, 1999 MT 197, ¶ 9, 295 Mont. 399, ¶ 9, 984 P.2d 733, ¶ 9. When a court grants a speedy trial motion, however, that date becomes the date of the case's disposition. Thus, the date that a district court grants a motion to dismiss based on speedy trial properly becomes the end date of the speedy

trial interval. In this case, the District Court correctly used the date of Billman's arrest to start the speedy trial clock and the date of its dismissal order as the end date. Officers arrested Billman on January 27, 2006, and the District Court granted Billman's motion to dismiss on November 1, 2006. The length of the delay in this case amounts to 278 days, seventy-eight days beyond the speedy trial trigger.

¶18 We presume that the accused has experienced some prejudice once the 200-day threshold passes. *Ariegwe*, ¶ 56. That prejudice intensifies as the delay extends beyond the 200-day trigger date, and the State's burden to justify the delay increases. *Ariegwe*, ¶ 62. In *Ariegwe*, the delay amounted to 208 days beyond the trigger date. Thus, we required the State to "provide particularly compelling justifications for the delay" under the second speedy trial factor and to "make a highly persuasive showing" that the delay did not prejudice Ariegwe under the fourth speedy trial factor. *Ariegwe*, ¶ 123. We also recognized that the quantum of proof expected from Ariegwe under the fourth factor correspondingly decreased. *Ariegwe*, ¶ 123. The delay in this case amounts to less than that in *Ariegwe*; however, 278 days of delay presents a considerable amount of delay, and we conclude that the State's justifications for the delay must be compelling and that it must make a persuasive showing that the delay did not prejudice Billman. Further, the quantum of proof required from Billman under the fourth factor is correspondingly lower. *Ariegwe*, ¶ 113.

## 2. The reasons for the delay

¶19    The State concedes that it bears responsibility for the delay in this case. The State maintains, however, that the majority of the delay constitutes institutional delay and that valid reasons exist to justify the remaining delay. The State asserts that the District Court failed to assign culpability to the periods of delay, and the State argues that the court would have accorded little weight to this speedy trial factor if it properly had weighed the delay periods.

¶20    Under the second speedy trial factor, a court must identify each period of delay, attribute the delay to the appropriate party, and assign weight to the periods of delay based on the reasons for the delay. *Ariegwe*, ¶ 108. Delay is charged to the State unless the accused caused the delay or affirmatively waived the speedy trial right for that period. *Ariegwe*, ¶ 108. Institutional delay and delay associated with valid reasons weighs less heavily against the State than delay resulting from the State's lack of diligence or bad faith. *Ariegwe*, ¶ 108. Institutional delays are those that are inherent in the criminal justice system and due to circumstances beyond the control of the accused or the State; crowded court dockets and difficulties in setting trial dates often cause institutional delays. *State v. Blair*, 2004 MT 356, ¶ 19, 324 Mont. 444, ¶ 19, 103 P.3d 538, ¶ 19. Valid reasons for delay include the unavailability of a key prosecution witness or additional time to prepare for a particularly complex trial. *Ariegwe*, ¶ 70 (citations omitted). The "specific cause and culpability for each period of delay" bears significance when the factors are balanced. *Ariegwe*, ¶ 109.

8

¶21    The District Court concluded that the second speedy trial factor favored Billman's motion to dismiss because the State bore responsibility for the entirety of the pretrial delay. The court cited "calendar clog" and the unavailability of the State's witness as reasons for the delay. The court charged the delay to the State as institutional delay and noted that the delay associated with the State's unavailable witness was also attributable to the State.

*First Trial Setting*

¶22    The delay between Billman's arrest on January 27, 2006, and his first trial date on June 19, 2006, amounts to 143 days of delay. This delay is attributable to the State. The delay associated with the initial trial setting constitutes delay that is inherent in the criminal justice system and beyond Billman's or the State's control; thus, the 143-day delay constitutes institutional delay. *Blair*, ¶ 19.

*Second Trial Setting*

¶23    The delay between Billman's first trial date on June 19, 2006, and Billman's second trial date on August 21, 2006, amounts to sixty-three days of delay. The District Court found that this delay was "based on docket control and other matters proceeding to trial." Thus, the additional sixty-three days of delay are attributable to the State as institutional delay. *Blair*, ¶ 19.

*Third Trial Setting*

¶24    The delay between Billman's second trial date on August 21, 2006, and Billman's third trial date on October 30, 2006, amounts to seventy days. The District Court found

9

that this delay was caused by the unavailability of the State's primary witness, the arresting officer. The State concedes that the District Court correctly attributed the delay to the State, but asserts that the delay should weigh less than institutional delay because the officer's absence constituted a "valid reason" for delay.

¶25 Billman points out that the State filed its motion to continue after the trial date had passed. The arresting officer apparently was available to testify after October 1, 2006, and Billman argues that an earlier trial date may have been available if the State had moved for a continuance sooner. Billman contends that the time during which the State's witness was available to testify – October 1, 2006 to October 30, 2006 – should weigh more heavily against the State.

¶26 Delays caused by the unavailability of prosecution witnesses on scheduled trial dates constitute valid reasons for delay. *Ariegwe*, ¶ 70 (citations omitted). For example, in *State v. Johnson*, the State moved for two continuances because key witnesses were unavailable for scheduled trial dates. 2000 MT 180, ¶ 9, 300 Mont. 367, ¶ 9, 4 P.3d 654, ¶ 9. We determined that the State's culpability was minimal because the State engaged in no "intentional or purposeful foot-dragging" and harbored no motive to cause undue delay. *Johnson*, ¶ 20. In *Johnson*, the State moved for continuances before the scheduled trial dates. *Johnson*, ¶ 9.

¶27 In this case, the State's primary witness was unavailable for the August 21, 2006 trial date because of training. The record reveals no bad faith motives on the part of the State and, generally, the officer's unavailability would constitute a valid reason for delay.

10

*Johnson*, ¶ 20.  Unlike *Johnson*, however, the State moved for a continuance four days *after* the scheduled trial date passed.  The State offers no explanation for its late motion.  The State bears the burden to explain pretrial delays.  *Ariegwe*, ¶ 64.  In light of the State's failure to provide any explanation, we agree with Billman that the thirty-day portion of the delay when the officer was available to testify should weigh more heavily against the State.  Although the record does not indicate that the State engaged in bad faith or "purposeful foot-dragging," nor does it reveal the reasons that the State failed to move for a continuance until after the trial date had passed.  The timing of the motion is within the control of the prosecutor, and thus, the delay is not institutional.  We conclude that the thirty-day delay should be accorded the weight associated with negligence or lack of diligence on the part of the prosecutor.  Accordingly, forty days of the delay associated with the third trial setting weigh minimally against the State because valid reasons existed for the delay, and thirty days of the delay weigh more heavily against the State due to its apparent lack of diligence.

*Fourth Trial Setting*

¶28    The delay between Billman's third trial date on October 30, 2006, and Billman's fourth trial date on November 1, 2006, amounts to two days of delay.  The District Court found that this delay was based on docket control.  Thus, the additional two days of delay are attributable to the State as institutional delay.  *Blair*, ¶ 19.

*Fifth Trial Setting*

11

¶29 The delay between Billman's fourth trial date on November 1, 2006, and Billman's fifth trial date on December 4, 2006, amounts to thirty-three days of delay. This delay resulted from Billman's speedy trial motion. Delay resulting from a speedy trial motion is attributable to the accused if the motion is filed less than thirty days prior to a scheduled trial date. *Ariegwe*, ¶ 116. Billman moved for dismissal two days before his scheduled trial date; thus, the delay generally would be attributable to Billman. In this case, however, the District Court granted Billman's speedy trial motion on November 1, 2006, which disposed of the case, and the District Court released Billman from incarceration the same day. As discussed in ¶¶ 16-17, the proper timeframe in a speedy trial analysis is the interval between accusation and a case's disposition. *Ariegwe*, ¶ 43, *Ellenburg*, ¶ 16. Further, as Billman no longer faced pending criminal charges or actual restrictions on his liberty, the speedy trial guarantee no longer applied. *MacDonald*, 456 U.S. at 8, 102 S. Ct. at 1502; *Loud Hawk*, 474 U.S. at 310-11, 106 S. Ct. at 653-54. Accordingly, the thirty-three-day delay associated with Billman's motion does not factor into our speedy trial analysis.

¶30 In summary, the interval between Billman's accusation and the final disposition of his case amounted to 278 days. The entire 278-day delay is attributable to the State: 208 days of institutional delay, 40 days of delay caused by valid reasons, and 30 days of delay resulting from the State's lack of diligence. Billman bears no responsibility for any of the pretrial delay. The State burden to explain pretrial delays increases as the pretrial delay lengthens. *Ariegwe*, ¶ 107. The majority of delay in this case amounts to institutional

delay. Nonetheless, the State and the courts bear the burden to promptly try cases. *Barker*, 407 U.S. at 529, 92 S. Ct. at 2191. Further, the delay that courts will tolerate for simple cases is considerably less than for complex cases. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Thus, we conclude that the second speedy trial factor weighs in Billman's favor.

### 3. The accused's responses to the delay

¶31 Under the third speedy trial factor, a court must evaluate the totality of the accused's responses to the pretrial delay to determine whether the accused actually wanted a speedy trial, a key consideration in determining whether the accused's speedy trial right has been violated. *Ariegwe*, ¶ 110. This evaluation also guides courts in determining the weight to accord the other speedy trial factors. *Ariegwe*, ¶ 110.

¶32 The District Court found that Billman never waived his speedy trial right. The court also found that Billman asserted his speedy trial right, expressed concerns regarding continuances that were beyond his control, and expressed his desire for a trial. The court concluded that Billman did not acquiesce to any pretrial delay and that Billman sincerely wanted a speedy trial. The District Court accorded this significant weight in considering the other factors.

¶33 The totality of Billman's various responses to the pretrial delay indicate that Billman wanted a speedy trial. Following the second trial continuance, Billman wrote a letter to the District Court complaining that his trial had been rescheduled twice after the trial dates already had passed. Billman's letter expressed his frustration with not

13

receiving notice of the continued trials until after the trial dates had passed and with spending over seven months incarcerated while "trying to get this matter resolved."

¶34    Additionally, Billman's communications with his attorneys indicate that Billman sincerely wanted a speedy trial. In June, Billman rejected a plea agreement from the prosecutor and informed his attorney that he wanted a jury trial. In September or October of 2006, Billman asked his attorney to file a motion to dismiss based on the speedy trial right. Billman's attorney advised him that the decisions regarding a speedy trial motion fell within the attorney's discretion; the speedy trial motion was not filed until October 30, 2006.

¶35    We accord no significant weight to the timing of Billman's speedy trial motion. At the time of Billman's motion, counsel and the courts were operating under the speedy trial test and the presumptions set forth in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866. Billman's motion was filed on Monday, October 30, 2006, 276 days after Billman's arrest, the first business-day following the burden-shift to the State to demonstrate that pretrial delay had not prejudiced Billman. We accord significant weight, however, to Billman's communications to the District Court and counsel. These communications indicate that Billman sincerely wanted a speedy trial. Additionally, as discussed under the second speedy trial factor, Billman bore no responsibility for any of the pretrial delay, nor did Billman waive his speedy trial right. We conclude that the third speedy trial factor weighs heavily in favor of the conclusion that Billman was

denied his speedy trial right, and we accord this factor significant weight in the overall balancing.

*4. Prejudice to the accused*

¶36 Under the fourth speedy trial factor, a court must examine whether the pretrial delay has prejudiced the accused in light of the interests that the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that pretrial delay will impair the accused's defense. *Ariegwe*, ¶ 111. A presumption arises that pretrial delay has prejudiced the accused when the speedy trial analysis is triggered, and this presumption increases as the delay increases. *Ariegwe*, ¶ 56. We require the accused to present evidence establishing prejudice and the State to present evidence showing a lack of prejudice. *Ariegwe*, ¶ 56. As discussed in ¶ 18, based on the 278-day delay, the State must make a persuasive showing that the pretrial delay did not prejudice Billman, and the quantum of proof required from Billman is correspondingly lower.

¶37 *1. Oppressive pretrial incarceration*

¶38 We determine whether pretrial incarceration is oppressive by considering the duration of incarceration, the complexity of the charged offenses, whether the accused engaged in any misconduct related to the incarceration, and the conditions of the incarceration. *Ariegwe*, ¶ 113.

¶39 The likelihood that incarceration has been oppressive and prejudiced the accused increases as the duration of pretrial incarceration increases. *Ariegwe*, ¶ 90. The State

acknowledges that Billman was incarcerated from his arrest on January 27, 2006, until the District Court granted his speedy trial motion on November 1, 2006, a total of 278 days. Billman's incarceration stemmed entirely from the charges and his inability to post bond, not from any subsequent misconduct on his part.

¶40 We tolerate considerably less delay for a simple offense than for a complex charge. *Ariegwe*, ¶ 91. The State acknowledges that the charges against Billman constituted relatively simple charges. The State's argument at the speedy trial hearing underscores this point. According to the prosecutor, the State had responded to Billman's discovery requests by February 14, 2006, approximately two weeks after Billman's arrest, and the State intended to call only one witness at trial. Thus, Billman remained jailed for 260 days after the discovery was completed in a straightforward Felony DUI prosecution.

¶41 Billman also specifically points to his age, his indigence, and his anxiety and depression to illustrate the oppressive conditions of his incarceration. Although these considerations are relevant in a speedy trial analysis, they are more properly considered under the second interest that the speedy trial right protects. When analyzing the conditions of the incarceration to assess oppressiveness, we focus on the condition of the facilities and how they impact the accused, rather than solely on the condition of the accused. For example, courts determining whether an accused's incarceration was oppressive might focus on whether a facility lacks recreational opportunity, appropriate medical care, adequate food, and legal research capabilities. *Ariegwe*, ¶ 93. Billman

16

raises no challenges to the conditions of his incarceration. In this case, however, the lengthy incarceration coupled with the relatively simple charges establishes that pretrial delay prejudiced Billman.

¶42    *2. Anxiety and concern*

¶43    Criminal charges engender a certain amount of inherent anxiety and concern; thus, we focus on the extent that the pretrial delay has unduly prolonged the disruption of the accused's life or aggravated the accused's anxiety and concern. *Ariegwe*, ¶ 97. Our considerations include employment loss, financial and economic loss, and whether the accused's associations were curtailed. *Ariegwe*, ¶ 113.

¶44    The District Court found that Billman experienced substantial anxiety and concern due to the pretrial delay in his case. The court considered significant Billman's testimony that he began taking medication for depression and anxiety following his incarceration. The court also concluded that Billman suffered economic hardship by being unable to work during his incarceration.

¶45    The State asserted at the speedy trial hearing that Billman's testimony was not credible; on appeal, the State maintains that Billman's testimony was "brief and uncertain" on this issue. We defer to the District Court's judgment on issues of witness credibility. *In re T.L.* 2005 MT 256, ¶ 18, 329 Mont. 58, ¶ 18, 122 P.3d 453, ¶ 18. Our review of the record convinces us that the District Court's findings are not clearly erroneous. Billman testified that he worked at the sugar beet factory at the time of his arrest and that he would have worked as a welder at Agri-Systems following his

employment with the sugar beet factory. Billman testified that he started taking antidepressants and anti-anxiety medication as a result of his incarceration. Billman further testified that since being jailed he could no longer see his boys. Moreover, Billman's letter to the court indicated that his anxiety and concern were not due to the nature of the charges, but due to the length of the pretrial delay. In his letter, Billman complained about the repeated continuances and stated, "I have lost my job, so I sit in jail until 'god knows when' or until they break me and [force] me to 'plead guilty' although I am a innocent man. . . . The 18 hours of lock down day after day has taken a severe toll on me mentally and physically." (Paragraph break omitted.) We agree with the District Court that Billman's pretrial incarceration unduly prolonged the disruption to his life and aggravated Billman's anxiety and concern.

¶46    *3. Impairment of the defense*

¶47    Limiting the possibility that pretrial delay will impair the accused's defense arguably is the most important interest that the speedy trial right protects because an accused's inability to present an effective defense undermines the fairness of the system. *Ariegwe*, ¶ 98. The accused's failure to submit affirmative proof of prejudice is not fatal to a speedy trial claim, and, in the absence of affirmative proof of impairment, we focus on the other speedy trial factors to assess whether the pretrial delay has prejudiced the accused's defense. *Ariegwe*, ¶¶ 99-100. Pretrial delay prejudices an accused if defense witnesses are unable to accurately recall past events. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193.

18

¶48    The State maintains that the pretrial delay did not prejudice Billman's defense. According to the State, the charges against Billman "were relatively simple" and the pretrial delay would not have threatened the fairness of Billman's trial. The District Court concluded that the pretrial delay moderately impaired Billman's ability to present a defense. The District Court determined that Billman's incarceration impeded his ability to adequately prepare a defense and also noted that Billman's memory faded during his incarceration, which hindered his ability to testify effectively. Billman's testimony at the speedy trial hearing supports the court's conclusion that Billman's memory faded regarding the events surrounding his arrest. Additionally, the other speedy trial factors – the length of delay, Billman's responses to the delay, and Billman's incarceration for the entirety of the lower proceedings – indicate that the pretrial delay impaired Billman's ability to present an effective defense.

¶49    B.    Balancing the speedy trial factors

¶50    We balance the four speedy trial factors to determine whether an accused has been denied the speedy trial right. *Ariegwe*, ¶ 112. The State concedes that the first three speedy trial factors "arguably weigh in Billman's favor," but argues that it "made a persuasive showing" that the pretrial delay did not unduly prejudice Billman. We accord no single factor dispositive weight; rather, we consider the factors together with other relevant circumstances. *Ariegwe*, ¶ 112.

¶51    The first speedy trial factor, the length of the delay, establishes a pretrial delay of 278 days and weighs in Billman's favor. The second factor, the reasons for the delay,

19

also weighs in Billman's favor because the State bears responsibility for the entire pretrial delay; though institutional delay constitutes the majority of pretrial delay, it nonetheless weighs against the State. The third speedy trial factor, the accused's responses to the delay, indicates that Billman sincerely wanted a speedy trial; this factor weighs heavily in Billman's favor. Finally, the fourth factor, prejudice to the accused, weighs in Billman's favor. Though the State questioned the source of Billman's anxiety and concern, the State failed to persuasively show that Billman's anxiety and concern were not due to the pretrial delay. Billman, on the other hand, produced evidence that supported the District Court's finding that Billman's anxiety and concern were due to the pretrial delay. Further, Billman's testimony showed his inability to accurately recall the events surrounding his arrest.

¶52 We conclude that the State failed to persuasively show that the pretrial delay did not prejudice Billman. We agree with the District Court that all of the speedy trial factors weigh in Billman's favor, and thus, we affirm the District Court's conclusion that Billman was denied his right to speedy trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

20

Justice James C. Nelson, specially concurring.

¶53 I concur in the Court's conclusion that Billman was denied his constitutional right to a speedy trial. Moreover, except for the two points discussed in ¶¶ 58-71 below, I agree with the Court's analysis in reaching this conclusion. I write separately, however, to clarify my position on certain facets of this case.

## Balance of the Factors

¶54 I consider the speedy trial issue in this case to be closer than the Court's Opinion reflects. On one hand, while all of the 278-day delay was attributable to the State, there is no evidence that the prosecutor engaged in purposeful foot-dragging or bad-faith delay. Rather, almost all of the delay (roughly 90 percent of it) was due either to congestion in the District Court's docket or to the legitimate unavailability of the State's witness (the arresting officer was unavailable to testify from late August through the end of September 2006 because he had been called away for military training), both of which are weighed less heavily against the State. *See State v. Ariegwe*, 2007 MT 204, ¶¶ 67-71, 338 Mont. 442, ¶¶ 67-71, 167 P.3d 815, ¶¶ 67-71. Furthermore, I cannot agree with the significance the District Court attributed to Billman's testimony at the speedy trial hearing that he was feeling nervous and had begun taking anti-depressants and anti-anxiety pills during his incarceration. Billman produced no evidence whatsoever—not even an affidavit from the prescribing physician—tying his use of these medications to the delay (as opposed to the fact of being incarcerated). It is necessary, in this respect, to recall that a certain amount of anxiety and concern is inherent in being accused of a crime

21

and that the speedy trial guarantee is designed to shorten—not eliminate—the disruption of life caused by arrest and the presence of unresolved criminal charges. *Ariegwe,* ¶¶ 97, 147-150. Consequently, the issue is not simply whether the accused feels nervous or has started taking medication to alleviate anxiety or depression while incarcerated. Rather, the key question is whether *the delay* in bringing the accused to trial *unduly prolonged* the disruption of his life or *aggravated* the anxiety and concern that are inherent in being accused of a crime. *Ariegwe,* ¶ 97. Accordingly, testimony by an accused that he is nervous, anxious, and taking medications is, by itself, and even if credible, inconclusive on the anxiety-and-concern issue.

¶55 On the other hand, I agree with the Court that Billman's responses to—or, more specifically, his concerns and complaints about—the pretrial delay in this case weigh heavily in favor of the conclusion that he was denied his right to a speedy trial. Opinion, ¶¶ 33-35. Furthermore, it is well-established that both the prosecutor and the court have an affirmative constitutional obligation to try the accused in a timely manner and that this duty requires a good-faith, diligent effort to bring the accused to trial quickly. *See Ariegwe,* ¶ 65; *State v. Blair,* 2004 MT 356, ¶ 23, 324 Mont. 444, ¶ 23, 103 P.3d 538, ¶ 23; *In re A.G.,* 2002 MT 111, ¶ 26, 309 Mont. 491, ¶ 26, 47 P.3d 831, ¶ 26. Thus, it is the prosecution's duty, when it becomes aware that one of its witnesses is going to be unavailable to testify at trial, to notify the court and the accused of this fact promptly so that the trial can be reset for the earliest possible date. Here, however, the prosecutor's motion to reset the trial due to the arresting officer's absence for military training was

22

filed on August 25, 2006, four days *after* the previous trial date of August 21 had passed. According to the motion, the officer was "anticipated to return by October 1, 2006"; and the new October 30 trial setting presumably was the next available date on the District Court's calendar. Yet, as Billman and the Court point out, a date closer to October 1 may have been available had the prosecutor moved for a continuance in a timelier manner. In light of the prosecutor's failure to do so and the fact that the State bears the burden of explaining the pretrial delays, *Ariegwe*, ¶¶ 64-65, the resulting delay is properly accorded the weight associated with negligence or lack of diligence on the part of the State. Opinion, ¶ 27.

¶56 Lastly, Billman was incarcerated for 278 days awaiting trial on relatively simple charges (driving under the influence of alcohol, driving while suspended or revoked, and driving without proof of liability insurance) which did not require much time to prepare. Indeed, it appears that the State planned to call only one witness (the arresting officer) and that discovery was completed about two weeks after Billman's arrest. Under these circumstances, the duration of Billman's pretrial incarceration was oppressive. In this regard, I cannot agree with the State's argument that Billman was not subjected to oppressive pretrial incarceration because, at the time of his arrest, he "was essentially unemployed and homeless" and, thus, "did not lose a job or a home as a result of being incarcerated." Setting aside the fact that Billman testified to the contrary at the speedy trial hearing that he, in fact, was employed and resided at a motel at the time of his arrest, the suggestion that pretrial incarceration is not oppressive if the accused "was essentially

23

unemployed and homeless" at the time of arrest is inappropriate. Granted, this Court has recognized that adverse impact on employment status due to incarceration or the presence of unresolved criminal charges is a pertinent consideration under Factor Four. *See e.g. State v. Bailey*, 201 Mont. 473, 480-81, 655 P.2d 494, 498-99 (1982); *State v. Johnson*, 2000 MT 180, ¶ 30, 300 Mont. 367, ¶ 30, 4 P.3d 654, ¶ 30; *State v. Kipp*, 1999 MT 197, ¶ 21, 295 Mont. 399, ¶ 21, 984 P.2d 733, ¶ 21. Thus, for example, if the accused was forced to give up a preexisting job while incarcerated, he or she might argue that the impact of this loss increased the oppressiveness of the incarceration or added to his or her anxiety and concern; and the same would be true if the accused lost his or her home while incarcerated due to an inability to make payments. However, we have never said that loss of preexisting employment or housing is a *prerequisite* to a determination of oppressive pretrial incarceration or aggravated anxiety and concern. Such an approach, which would disadvantage individuals who are without a stable job and home at the time of arrest, would be incompatible with the constitutional right to fair and equal treatment under the law.

¶57　For the foregoing reasons, while I believe this case is close, I concur in the Court's conclusion that the balance weighs in Billman's favor.

**Measuring the Length of the Delay**

¶58　In measuring the length of the delay, the Court excludes the 33 days between the fourth trial setting (November 1, 2006) and the fifth trial setting (December 4, 2006). That 33-day postponement was necessitated by Billman's October 30 speedy trial motion.

24

The Court explains that this period is not counted because the speedy trial timeframe ends on the date of the case's disposition, and here the District Court granted Billman's motion on November 1, which the Court states stopped the speedy trial clock. Opinion, ¶¶ 16-17, 29.

¶59 I agree with the Court that because Billman's right to a speedy trial was violated as of Day 278, it is unnecessary to consider the additional 33 days leading up to the fifth trial setting. However, I disagree with the Court's categorical statement that "the date that a district court grants a motion to dismiss based on speedy trial properly becomes the end date of the speedy trial interval." Opinion, ¶ 17. It is entirely possible that under different circumstances, Billman's right to a speedy trial would not have been violated as of Day 278, but would have been violated as of Day 311 (the fifth trial setting). In other words, under this scenario, those 33 days of delay would have tipped the scales in his favor. Yet, contrary to the Court's intimation, he is not required to wait until Day 311 to file his speedy trial motion. Indeed, we have provided a strong incentive for defendants to file such motions at least 30 days in advance of trial. *See Ariegwe*, ¶ 116 ("[A]ny delay directly attributable to the filing of a speedy trial motion less than *thirty* days prior to the scheduled trial date should be charged to the accused. Conversely, any delay directly attributable to the filing of such a motion *thirty or more* days prior to the scheduled trial date should be charged to the State (as institutional delay)."). Accordingly, a defendant may argue in his motion that while his right to a speedy trial has not yet been violated, it will be by the time the current trial setting comes around.

25

¶60     A hypothetical may assist in making this point.  On Day 200, as the result of the prosecutor's motion to continue, the trial judge resets the trial for the earliest opening on the court's calendar.  That date is Day 300.  The defendant, on Day 201, files a motion to dismiss, arguing that the additional delay of 100 days violates his right to a speedy trial.  On Day 210, the trial judge considers the motion, agrees with it, and dismisses the charges.  The judge reasons that the speedy trial right is violated not by virtue of the existing 210-day delay, but by virtue of the unavoidable 300-day delay that will have occurred by the time the defendant actually is brought to trial.  The State then appeals the decision to this Court.  In this situation, we do not evaluate the speedy trial claim based on the delay of 210 days between arrest and the date of disposition.  Rather, we consider the delay of 300 days between arrest and the last trial setting, as did the trial judge.  For this reason, the Court's statement in ¶ 17 to the effect that the length of the delay always terminates on the date the district court grants the speedy trial motion is incorrect.

¶61     The statement in ¶ 17 also would create an untenable possibility.  Say that in the case at hand we had *disagreed* with the District Court that Billman's right to a speedy trial was violated by Day 278 when the court considered his motion.  Could we not then consider whether the right would have been violated on the last trial setting (Day 311)?  Surely, we could.  Indeed, it makes no sense to reverse the court's decision and remand for a trial if Day 311 would have been constitutionally excessive delay.

¶62     The point here is that we should not be announcing an imprecise and overbroad rule that seemingly precludes consideration of pretrial delay all the way up to the final

26

trial setting in cases where the district court has granted the speedy trial motion. In some of those cases, the period of delay between the date of disposition and the final trial setting may factor into the parties' and the district court's decision, in which case we too must consider that delay. In the case at hand, it is sufficient to hold that Billman's right to a speedy trial was violated as of Day 278. Contrary to the Court's analysis in ¶¶ 17 and 29, we are not precluded from considering the 33 days between the fourth and fifth trial settings; we just need not consider those days because the 278-day delay is sufficient.

### Counting the Delay Occasioned by the State's Appeal

¶63 Given the District Court's and this Court's determinations that Billman's right to a speedy trial was violated as of Day 278, it also is unnecessary to consider the delay that has accumulated during the State's appeal of the District Court's ruling. Nevertheless, the Court points out that any such delay "bears no relevance to Billman's speedy trial claim." Opinion, ¶ 15. The Court explains that following the District Court's order granting Billman's speedy trial motion, "no criminal charges were pending against Billman, nor was he subjected to actual restrictions on his liberty, and thus, the speedy trial guarantee no longer applied." Opinion, ¶ 15 (citing *United States v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982), and *United States v. Loud Hawk*, 474 U.S. 302, 310-11, 106 S. Ct. 648, 653-54 (1986)).

¶64 The Court's reasoning is correct as far as federal law goes. *See Loud Hawk*, 474 U.S. at 310-12, 106 S. Ct. at 653-54. However, I question whether the *Loud Hawk* rule is

27

appropriate for purposes of speedy trial analysis under the Montana Constitution. For that matter, I question whether we should be offering any view on this matter within the context of this case, given that it is totally unnecessary for us to consider what transpired after Day 278. In any event, because the Court cites the *Loud Hawk* rule, I shall discuss why I believe that categorical exclusion of the time which passes after the dismissal of charges on speedy trial grounds is ill-advised.

¶65 For one thing, a criminal case is not necessarily over just because a district court grants a speedy trial motion. In the case at hand, for instance, the State has continued "to align its full resources against [Billman] in judicial proceedings" by appealing the dismissal of the charges against him. *Loud Hawk*, 474 U.S. at 320, 106 S. Ct. at 659 (Marshall, Brennan, Blackmun, and Stevens, JJ., dissenting). Moreover, in so doing, the State has subjected the District Court's decision to appellate review and, correspondingly, to the possibility of reversal, which would reinstate the charges. Consequently, until today, there has not been a final disposition of the charges against Billman. To the contrary, there has been a pending, docketed case captioned "*State v. Billman*"—a clear indication that Billman, throughout this period, has stood accused of a crime or crimes. One purpose of the speedy trial guarantee is "to minimize anxiety and concern accompanying public accusation." *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971) (internal quotation marks omitted). Yet, a defendant may suffer severe anxiety, economic hardship, and damage to his reputation in the community while

28

awaiting final disposition of the criminal accusations against him. *See Ariegwe*, ¶ 96; *State v. Haskins*, 220 Mont. 199, 203, 714 P.2d 119, 121-22 (1986).

¶66 Aside from the continued pendency of the criminal case, there is the matter of impairment of the defense. Prejudice under Factor Four of the balancing test is assessed in the light of the interests of defendants which the right to a speedy trial was designed to protect. *Ariegwe*, ¶ 86. One such interest is limiting the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. *Ariegwe*, ¶¶ 87-88. The Supreme Court has characterized this interest as "the most serious" of the interests protected by the speedy trial right "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 2193 (1972). The Supreme Court pointed out that "[i]f witnesses die or disappear during a delay, the prejudice is obvious" and that "[t]here is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193.

¶67 Likewise, this Court has recognized that "time may erode the accuracy of witness testimony and exculpatory evidence," *State v. Jefferson*, 2003 MT 90, ¶ 36, 315 Mont. 146, ¶ 36, 69 P.3d 641, ¶ 36; that "[p]retrial delay prejudices an accused if defense witnesses are unable to accurately recall past events," Opinion, ¶ 47; and that "[t]he loss of a 'main witness' as a result of delay attributable to the State is prejudicial to the defense," *State v. Kipp*, 1999 MT 197, ¶ 23, 295 Mont. 399, ¶ 23, 984 P.2d 733, ¶ 23. Thus, we stated in *Jefferson* that impairment of the defense "often carries more weight

29

than the other bases for concluding a defendant has been prejudiced by a pretrial delay."

*Jefferson*, ¶ 36.  Similarly, the Court observes that "[l]imiting the possibility that pretrial delay will impair the accused's defense arguably is the most important interest that the speedy trial right protects because an accused's inability to present an effective defense undermines the fairness of the system."  Opinion, ¶ 47; *accord State v. Good*, 2002 MT 59, ¶ 29, 309 Mont. 113, ¶ 29, 43 P.3d 948, ¶ 29; *State v. Price*, 2001 MT 212, ¶ 28, 306 Mont. 381, ¶ 28, 34 P.3d 112, ¶ 28.

¶68    It is not clear that impairment of the defense should carry the significance that *Barker* and many of our past decisions suggest.[1]  Indeed, the Supreme Court has given conflicting statements concerning the relative importance of this consideration.  On one hand, as noted above, the Supreme Court has characterized the possibility that the defense will be impaired as "the most serious" of the interests that the speedy trial right was designed to protect.  *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *accord Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692 (1992).  Yet, on the other hand,

---

[1] *See e.g. State v. Bowser*, 2005 MT 279, ¶ 21, 329 Mont. 218, ¶ 21, 123 P.3d 230, ¶ 21 (stating that this consideration carries "more weight" than the other bases for concluding a defendant has been prejudiced by the pretrial delay); *State v. Longhorn*, 2002 MT 135, ¶ 39, 310 Mont. 172, ¶ 39, 49 P.3d 48, ¶ 39 (same); *State v. Johnson*, 2000 MT 180, ¶ 34, 300 Mont. 367, ¶ 34, 4 P.3d 654, ¶ 34 (same); *City of Billings v. Peterson*, 2004 MT 232, ¶ 35, 322 Mont. 444, ¶ 35, 97 P.3d 532, ¶ 35 (referring to this consideration as the "weightiest" interest); *State v. LaGree*, 2007 MT 65, ¶ 30, 336 Mont. 375, ¶ 30, 154 P.3d 615, ¶ 30 (stating that whether the delay caused any impairment to the defense is the "most important" consideration in determining prejudice); *State v. Spang*, 2007 MT 54, ¶¶ 12, 24, 336 Mont. 184, ¶¶ 12, 24, 153 P.3d 646, ¶¶ 12, 24 (same); *State v. Blair*, 2004 MT 356, ¶ 32, 324 Mont. 444, ¶ 32, 103 P.3d 538, ¶ 32 (same); *State v. Stuart*, 2001 MT 178, ¶ 20, 306 Mont. 189, ¶ 20, 31 P.3d 353, ¶ 20 (same); *State v. Haser*, 2001 MT 6, ¶ 35, 304 Mont. 63, ¶ 35, 20 P.3d 100, ¶ 35 (same).

the Supreme Court has stated that the right to a speedy trial is "not primarily intended to prevent prejudice to the defense caused by passage of time," *MacDonald*, 456 U.S. at 8, 102 S. Ct. at 1502; that "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense," *Marion*, 404 U.S. at 320, 92 S. Ct. at 463; and that "the Speedy Trial Clause's core concern is impairment of *liberty*," *Loud Hawk*, 474 U.S. at 312, 106 S. Ct. at 654 (emphasis added), as opposed to impairment of the *defense*. *See also Doggett*, 505 U.S. at 660-66, 112 S. Ct. at 2695-98 (Thomas, J., Rehnquist, C.J., & Scalia, J., dissenting).

¶69 But assuming that impairment of the defense is "the most serious" or "the most important" of the interests protected by the speedy trial right, it would defy logic to adopt a categorical rule excluding from our analysis the time which passes while the State appeals a district court's grant of a speedy trial motion. Obviously, memories and evidence may degrade during this period. Indeed, degradation of memories and evidence does not magically stop on the date a speedy trial motion is granted. Moreover, if an exculpatory witness dies, if a crucial witness goes missing, or if exculpatory evidence is lost or destroyed *during* the course of the State's appeal, the defense is impaired no less than if one or more of these events occurs *before* the speedy trial motion is granted or *after* this Court reverses the district court's decision, reinstates the charges, and remands the case for trial.

¶70 In the case at hand, the District Court found (and this Court agrees) that Billman's memory regarding the events surrounding his arrest faded during his 278-day

31

incarceration and that this, in turn, impeded his ability to testify effectively and to prepare his defense adequately. Opinion, ¶ 48. Now, over 970 days have passed since Billman's arrest on January 27, 2006. It is implausible to suggest that his ability to present an effective defense is as strong now as it was 700 days ago. Thus, if impairment of the defense is to play such a prominent role in the Factor Four analysis, we cannot categorically exclude from the speedy trial equation the time which passes after the district court grants a speedy trial motion.

¶71    Indeed, had we decided that the District Court erred in granting Billman's speedy trial motion, we could not then simply disregard the additional 700 days of delay occasioned by the State's initial appeal, by this Court's decision last November to remand this case to the District Court for the entry of findings of fact and conclusions of law based on *Ariegwe*, and by the State's subsequent appeal following the District Court's January 4, 2008 order. Billman is in no way responsible for any of that delay, and we would render his constitutional right to a speedy trial utterly meaningless if we were to remand this case for a trial (which likely would not occur until well over 1,000 days had passed since his arrest) without first considering that delay. Accordingly, the Court should not so cavalierly dismiss the time that has passed since Day 278. Opinion, ¶ 15. If Billman's right to a speedy trial was violated by 278 days of delay, can it logically be maintained that his right would not be violated by 1,000 days of delay?

**The District Court's Post-*Ariegwe* Order**

32

¶72 Lastly, as just noted, this Court remanded this case to the District Court last November for the entry of findings of fact and conclusions of law based on *Ariegwe*. In *Ariegwe*, we set out our revised speedy trial test. *See Ariegwe*, ¶¶ 34-112. We consciously adopted and explained the new test in substantial detail so as to provide a logical and chronological structure to be used by counsel and the trial courts in resolving speedy trial claims. While the analytical model has been described as the "mother of all balancing tests," *Ariegwe*, ¶ 184 (Rice, Morris, Leaphart & Warner, JJ., specially concurring), the *Ariegwe* framework, if followed, ensures that all of the relevant circumstances are considered and balanced. We demonstrated this in *Ariegwe* by applying the new test to Ariegwe's speedy trial claim. *See Ariegwe*, ¶¶ 121-155.

¶73 Since *Ariegwe* was issued, appellate counsel in numerous cases have been diligent in following and analyzing the relevant factual circumstances pursuant to the new test. The Court's Opinion in the case at hand likewise tracks the *Ariegwe* framework and provides a useful and well-reasoned application of the test to the facts of this case. Unfortunately, the same cannot be said of the District Court's findings of fact and conclusions of law. It appears that the court simply took the outline provided in ¶ 113 of *Ariegwe* and plugged facts into it with little or no corresponding analysis. While that outline was provided as a summary or checklist of the various considerations that should be considered when applying the revised test, it was not meant as a substitute for an actual detailed explanation of why the speedy trial motion should or should not be granted.

¶74 As noted, the Court's Opinion lays out the analysis that the District Court should have provided under *Ariegwe*. But it is not this Court's responsibility to provide the flesh to the trial court's skeletal decision. That is not how the revised test was intended to operate; indeed, it turns the process on its head. In fact, the reason we remanded this case to the District Court following our decision in *Ariegwe* and the reason we have continued to follow this procedure in subsequent appeals involving speedy trial claims is to allow the trial courts to analyze the four factors and do the balancing in the first instance. In order to determine if a speedy trial motion should be granted and to enable this Court expeditiously to review that determination, it is necessary that the parties and the trial courts apply the test in the first instance comprehensively.

### Conclusion

¶75 In conclusion, with the foregoing points in mind, I concur in the Court's holding that Billman was denied his constitutional right to a speedy trial.

/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

¶76 I believe Billman's motion to dismiss should be denied under application of the *Ariegwe* test.

¶77 Under speedy trial factor one, prejudice to a defendant "intensifies over time," with the quantum of proof expected of the accused to decrease, and of the State to

34

increase, "as the delay gets longer." *Ariegwe*, ¶ 113. In *Ariegwe*, the delay was 208 days beyond the 200-day trigger date. We noted that this was "more than twice the amount of delay that is considered sufficiently prejudicial to trigger the speedy trial test," and thus required the State to provide "compelling justifications" for the delay. *Ariegwe*, ¶ 123. Here, the delay is only 78 days beyond the trigger date, and yet the Court imposes the same "compelling justification" quantum of proof upon the State. Opinion, ¶ 18. Thus, the "sliding scale burden" is not being honored as designed in *Ariegwe* ("[T]he court must consider the extent to which the delay (again, irrespective of fault for the delay) stretches beyond the 200-day trigger date." *Ariegwe*, ¶ 62.).

¶78 Under factor two, reasons for the delay, I agree with Justice Nelson's comments that there was no evidence of foot-dragging or bad faith by the prosecutor and that this factor should weigh less heavily against the State. In *Ariegwe*, we noted that "[s]ignificantly, more than half of the State's delay was institutional in nature." *Ariegwe*, ¶ 135. Here, as Justice Nelson notes, virtually all of the delay is institutional. The Court finds fault in the timing of the prosecutor's motion, but even so, that resulted in only 30 days of delay. To the extent this factor weighs in Billman's favor, it is very minimal.

¶79 Under factor four, part 2, anxiety and concern of the accused, I agree with Justice Nelson that the testimony offered in support of Billman's anxiety and concern was insignificant for its failure to link aggravation of any anxiety to the delay itself. Under part 4, impairment of the accused's defense, the Court acknowledges that this factor is most important. *See also Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686,

35

2692 (1992) ("Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"). Although the District Court entered a conclusion of law that Billman's "ability to gather evidence, contact witnesses who may have testified on his behalf, otherwise prepare for his own defense" was hindered, Billman did not offer evidence in this regard, and thus the conclusion is not supported by the evidence. Billman offered only his own memory, asserting that, though admittedly an alcoholic who drinks frequently and who is charged with a drinking-related crime, that his inability to recall was due to the passage of time. Given the relative simplicity of the charge, and the importance of this factor in a speedy trial determination, I do not believe Billman demonstrated that his defense had been significantly impaired.

¶80 Consequently, after giving these factors the weight which, in my view, is appropriate, I believe the factors balance against the motion. Thus, I would reverse.


/S/ JIM RICE


36